217 So.2d 326 (1968)
STATE of Florida, Petitioner,
v.
Robert J. GALASSO, Respondent.
STATE of Florida, Petitioner,
v.
Joseph A. MANCUSI, Respondent.
No. 37220.
Supreme Court of Florida.
December 20, 1968.
Earl Faircloth, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., for petitioner.
C. Wendell Harris, Vero Beach, for respondents.
HOPPING, Justice.
The respondents, Robert J. Galasso and Joseph A. Mancusi, were tried jointly on two count informations charging them with (1) the unlawful possession of marijuana and (2) the cultivation of marijuana. After a jury trial, verdicts were returned against each of the respondents on both *327 counts charged. On appeal the Fourth District Court of Appeal reversed and remanded both respondents for a new trial. See Galasso v. State, 207 So.2d 45 (Fla. 4th DCA 1968).
The State thereafter filed its petition for writ of certiorari to this Court alleging direct conflict between the District Court's decision and the Supreme Court's prior decisions on the same point of law in State v. Hines, 195 So.2d 550 (Fla. 1967) and Flowers v. State, 59 Fla. 16, 52 So. 11 (1910).
An understanding of the facts and issues herein can best be gleaned from the District Court's opinion.
"The record indicates that on May 24, 1966, Mr. James B. Powers, a narcotics inspector with the Florida State Board of Health, went to an apartment occupied by the defendants in the City of Vero Beach accompanied by a detective from the police department of the City of Vero Beach and Lem Brumley, Jr., an investigator from the Indian River County Sheriff's Department. Upon arrival at the apartment, the officers served on the defendants a warrant for their arrests and a search warrant pursuant to which the officers searched the apartment. During the course of the search, one of the officers came across an envelope containing about four ounces of suspected marijuana and handed the envelope to Mr. Powers. Thereafter, Mr. Powers, the defendants, and the officers went out behind the apartment and examined a garden patch in which cannabis plants, commonly known as marijuana, were found growing.
"After the close of the state's case in chief, the defendant Joseph Mancusi took the stand in his own behalf and testified that he though the plants which he had protected and cultivated by watering were oregano, not marijuana. The defendant Galasso did not testify."
* * * * * *
Defendant Mancusi also testified that he was not aware of the envelope containing marijuana which was found on the dresser in the defendants' room. The District Court's opinion continues:
"The state called Mr. Lem Brumley, Jr., as a rebuttal witness. By the following questions and answers, Mr. Brumley related what occurred in the defendants' apartment when the envelope containing the suspected marijuana was found and given to Mr. Powers:
`Q. What, if anything, did the Defendant Mancusi say to you concerning this packet sitting on the dresser?
`* * *
`A. Mr. Powers examined the packet there that had the marijuana in it and he turned around and he made a statement to the effect, he says "Look here, boys," 
`[Objection by defendants.]
`BY THE COURT:
`Q. Were the defendants there at the time?
`A. Yes, sir.
`THE COURT: The objection is overruled.
`A. He said, "Look here, boys, look what I found; whose is this?" And Galasso, they were both sitting on the bed there and Galasso said, "Some man. Don't say anything." And that is all that was said. (Emphasis added.)
"The defendants promptly moved to strike the answer given by Officer Brumley, and the motion was denied. In our opinion this testimony was inadmissible as to both defendants and should have been stricken."
* * * * * *
The District Court upon the above facts held:
"The ruling in the Miranda decision to the effect that it is impermissible to penalize an individual who while in police custody exercises his privilege against *328 self-incrimination by remaining silent, prohibits the admission of testimony relating to the silence of a defendant during the investigatory stages of a criminal case, even though the defendant later chooses to take the stand at the trial and testify in his own behalf, cf. Jones v. State, Fla.App. 1967, 200 So.2d 574, 576. To permit the use of such testimony would penalize the defendant for having remained silent at the investigatory stage because evidence of such silence tends to derogate his testimony at trial and also implies guilt."
In Footnote 1 of its opinion the District Court stated that it did not believe its holding was inconsistent with our prior decision in State v. Hines, 195 So.2d 550 (Fla. 1967), because that case commenced prior to the effective date of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. Were it not for this statement in the footnote, there would be little doubt that State v. Hines, supra, is in direct conflict with the District Court's decision herein. Although this footnote distinguishes the two decisions for the purposes of the District Court's opinion, it does not foreclose our taking jurisdiction of this cause, because on its face the decision of the District Court of Appeal is clearly and admittedly in direct conflict on the same point of law with the decision of this Court in State v. Hines. For additional conflict see also Jones v. State, 200 So.2d 574 (Fla. 3rd DCA 1967).
We are again compelled to treat with another facet of the collateral issues raised by the now famous Miranda cases. The pivotal issue at hand is whether or not "Miranda-tainted" pre-trial statements are nevertheless admissible for the limited purposes of impeachment when defendant voluntarily chooses to testify on the same subject in his own behalf. It is upon this very limited issue that we focus our inquiry.
A brief review of the pertinent decisions in this area will prepare the way for our disposition of this case. Taken in chronological order, we specifically direct attention to the Federal Supreme Court's decision in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the Miranda cases, and subsequent federal cases interpreting Walder in light of Miranda.
In Walder, the defendant had been indicted in 1950 for possession of heroin but the indictment had been dismissed because the evidence of such possession had been obtained by an illegal search and seizure.
The same defendant was indicted again in 1952 for another, distinct offense of possession of heroin. In defense of this second charge, the defendant testified before the jury that he had never had any heroin in his possession. The trial court thereafter allowed the government to introduce the evidence of the defendant's earlier possession for the purpose of impeaching his testimony. The evidence was admitted over the objection that the impeaching evidence had been obtained in violation of the fourth amendment. The Supreme Court in sustaining the trial court's ruling wrote:
"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine [Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] would be a perversion of the Fourth Amendment.
* * * * * *
"Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for *329 letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65, 74 S.Ct. at 356.
For discussion of the various lower federal court interpretations of Walder, see the majority opinion in Groshart v. United States, 392 F.2d 172 (9th Cir.1968).
In 1966 the U.S. Supreme Court published its far reaching Miranda decisions. It should be remembered that the precise question herein concerning the admission of tainted pre-trial statements for the purpose of impeaching the testimony of an accused who voluntarily takes the stand, was not before the Court in Miranda. Nevertheless in Miranda the Supreme Court did say:
"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to `admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely `exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement." 384 U.S. at 476-477, 86 S.Ct. at 1629. (Emphasis added).
Furthermore the Court also explained that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. at 479, 86 S.Ct. at 1630 (Emphasis added).
Subsequent to Miranda numerous cases have brought into focus the dilemma caused by the question of whether tainted pre-trial statements can be used for impeachment purposes. A strong line of authority holds that such statements should be excluded for all purposes and that this was the principal import of the Miranda decisions. See Groshart v. United States, supra, and Jones v. State, supra.
There is another line of cases that hold that when the defendant voluntarily takes the stand in his own behalf he takes his integrity with him and should not be allowed to complain when subjected to the same inquiries as other witnesses. This line of cases would permit the use of pre-trial statements secured in violation of the required Miranda warning to be used for the limited purpose of impeachment. See State v. Jackson, 201 Kan. 795, 443 P.2d 279 (1968) and May v. State, 211 So.2d 845 (Miss. 1968).
It is our belief that the first line of cases represents the better view. The adoption of an exclusionary rule has in its favor simplicity of operation. It serves as an additional inducement to law enforcement officers to follow the dictates of Miranda by taking from them all hope that any useful advantage would be gained by their failure to give adequate pre-trial warnings to the accused. When law enforcement officers know that their failure to give adequate pre-trial warnings, provide counsel or otherwise follow the dictates of Miranda will absolutely preclude under any circumstances the use of any statement secured without such warnings, then the incentive will not be present for *330 them to violate the constitutional rights guaranteed by Miranda.
With regard to pre-trial statements made by defendant in situations when the required Miranda warnings have not been given, we believe the constitutionally correct rule to be that stated by the Fourth District Court of Appeal in the instant case when it said:
"The ruling in the Miranda decision to the effect that it is impermissible to penalize an individual who while in police custody exercises his privilege against self-incrimination by remaining silent, prohibits the admission of testimony relating to the silence of a defendant during the investigatory stages of a criminal case, even though the defendant later chooses to take the stand at the trial and testify in his own behalf, cf. Jones v. State, Fla.App. 1967, 200 So.2d 574, 576. To permit the use of such testimony would penalize the defendant for having remained silent at the investigatory stage because evidence of such silence tends to derogate his testimony at trial and also implies guilt."
Although the District Court correctly adopted the proper rule of law we nevertheless reach a different result than it did in our disposition of this cause. Admittedly the admission of the testimony of Mr. Brumley was error but the issues remain, was it such an error as to require reversal or was it, in fact, harmless error. The defendant Mancusi testified on direct that he did not know there was an envelope containing marijuana on his dresser and that he had never seen the envelope before. On rebuttal, Mr. Brumley testified that he picked up the envelope on the dresser and said, "Look here, boys, look what I found; whose is this?" and that the defendant Galasso replied, "Some man. Don't say anything." This was the only statement made by either defendant at that time.
That such an inconclusive and insubstantial colloquy can vitiate an otherwise proper trial so as to require reversal tends to make a mockery out of our system of jurisprudence. When read in context it is not clear who or what the "Some man," referred to was. Is the "Some man," defendants' former roommate Mr. Thompson or the mysterious Mr. Woolf who Mancusi stated asked the defendants to tend his "oregano" bushes? Was this phrase used in its slang sense meaning "big deal" or did it refer to Mr. Brumley as the "Some man."? Can it be said that the basically savvy cautionary statement to his companion by Galasso, "Don't say anything," so tainted the entire trial that it was such an error as to require a new trial? We cannot believe that either of the defendants' constitutional rights were violated by the admission of the brief exchange between Galasso and Mr. Brumley. The facts before us in the instant case clearly appear to call for a timely application of our harmless error statute. Section 924.33 of the Florida Statutes, F.S.A., provides:
"No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."
See also Section 59.041, Florida Statutes, F.S.A.
We conclude that the error committed by the trial court's admission of the inconsequential and imperspicuous pre-trial comment of Galasso was harmless error in that it could not have injuriously affected the substantial rights of either of the accused herein.
For the reasons above stated the writ of certiorari is granted, the decision of the District Court of Appeal is quashed and this cause is remanded for further proceedings not inconsistent herewith.
CALDWELL, C.J., and DREW, THORNAL and ERVIN, JJ., concur.