316 So.2d 41 (1975)
Albert Lee BENNETT, Petitioner,
v.
STATE of Florida, Respondent.
No. 45285.
Supreme Court of Florida.
July 15, 1975.
Rehearing Denied July 31, 1975.
Edward M. Kay and Joseph A. Varon of Varon, Stahl & Kay, Hollywood, for petitioner.
Robert L. Shevin, Atty. Gen. and C. Marie Bernard, Asst. Atty. Gen., for respondent.
ADKINS, Chief Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District, (Bennett v. State, 291 So.2d 686) which allegedly conflicts with another decision of a District Court of Appeal.
The petitioner (hereinafter referred to as defendant) was charged by information with arson in the third degree and possession of a fire bomb. Upon trial by jury, he was acquitted of possession of a fire bomb but found guilty of arson in the third degree.
During the course of the trial, defendant moved for a mistrial because an investigator-witness called by the State let it be known to the jury that defendant refused to sign a waiver of his Miranda rights under the Fifth Amendment to the United States Constitution. The Court denied the motion and subsequently instructed the jury to disregard that part of the testimony. *42 Defendant says that the reference to his refusal to sign a waiver form was a violation of his privilege against self-incrimination granted under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In Jones v. State, 200 So.2d 574 (Fla. App.3d, 1967), the Court adopted the language in Miranda, holding in effect that any comment upon the defendant's standing mute, or refusing to testify, in the face of an accusation was fundamental error requiring a new trial. The Court in its opinion said:
"The determinative question on this appeal is whether the introduction by the state, without objection, of testimony that the accused, while in custody, remained silent in the face of an accusation of guilt of the crime for which he was arrested and charged, constituted reversible error." (p. 576)
The Court then quoted from Miranda as follows:
"... In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (Emphasis theirs.) ...
"No distinction can be drawn between statements which are direct confessions and statements which amount to `admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." (p. 576)
The Court then held:
"Notwithstanding the fact that the evidence, aside from the testimony complained of, was sufficient to have supported a conviction, we are of the opinion that the administration of justice would best be served in this case by holding that the testimony in question, interdicted by Miranda, was improperly received, and that the resultant error was fundamental." (pp. 576-577)
The affirmance of the order of the trial judge denying the motion for mistrial [which is a part of the written record of the proceedings in the court under review, as distinguished from the report of the testimony] is in conflict with the holding of the Court in Jones v. State, supra. We have jurisdiction. Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965); Fla. Const., art. V, § 3(b)(3), F.S.A.
The defendant, a 39-year-old white male, lived and worked in Broward County for 19 years. A prosecution witness testified that on January 19, 1972, between 9:40 p.m. and 9:45 p.m., he saw a parked truck with a man behind the wheel on the driver's side. When the witness' headlights struck the occupant of the truck, the driver turned toward the witness, who later identified the driver as the defendant. This witness next noticed two men running from a crane at a construction site towards the truck. A fire began in the crane area and a moment later the entire crane burst into flames. Two men jumped into the truck which was then driven away from the scene.
The witness drove to a filling station where he reported the license number of the truck. The truck was later identified by the license tag as belonging to defendant.
At the trial the defendant claimed alibi, asserting that at the time of the alleged fire bombing he was in a restaurant approximately five miles away. Several witnesses testified that defendant was in the restaurant at the time of the event.
Defendant raises two questions on appeal. He first contends that the trial court erred in denying his motion for a *43 mistrial when the fire marshal testified that defendant refused to sign a waiver of rights and make a statement. The following discourse took place at the trial:
"Q. Would you tell the Court and the jury the circumstances that you saw Mr. Bennett, please?
"A. I saw him on the  I was with Sergeant Pokorny and I saw him on the job site where he was working.
"Q. And did you have occasion to have a conversation with him at that time?
"A. Yes.
"Q. Pertaining to this particular alleged arson?
"A. Yes.
"Q. Will you tell us the contents of that conversation?
"A. Well, Mr. Bennett, I believe, was operating a crane on the top of one of these hi-rise buildings and we asked if he'd be permitted to come down to the area and we could talk to him, and we did, or they allowed him to come down and we told him who we were and why we were there and asked him to identify himself that he was the Albert Bennett that we were interested in, and then at that point Sergeant Pokorny advised him of his rights and then we filled out a waiver form after we advised him of his rights and Mr. Bennett refused to sign the waiver, which would not permit us  ." (Tr. 63)
The Court denied defendant's motion for mistrial but instructed the jury to disregard the particular testimony set out above. This was reversible error for the reasons discussed in Jones v. State, supra. Other courts have reached a similar conclusion. See Baker v. United States, 357 F.2d 11 (CCA 5th Cir.); Walker v. United States, 404 F.2d 900 (CCA 5th Cir.1968).
In the case sub judice the error was not the deliberate product of the prosecutor. It was the result of an over-zealous attempt by a witness to be helpful in securing a conviction. Under the facts in this case, the error was not one which could be cured by an instruction.
During the cross-examination of defendant questions were asked relative to defendant's union activities. Although the alleged crime was committed at a construction site, the question being asked relative to defendant's union activities was extraneous to the issue of guilt or innocence of defendant. Such a line of inquiry could only have been for the purpose of suggesting, by innuendo, some involvement by the union. The following occurred during the cross-examination:
"Q. Are you pretty active in that Union, sir?
"A. I attend all the meetings, yes.
"Q. I can't hear you. Will you speak a little louder?
"A. I said I attend all their meetings.
"Q. Are you an officer?
"A. No, sir.
"Q. Do you ever do special projects for that Union?
"A. No.
"Q. Are you known in that Union as the enforcer?" (Tr. 297)
Defendant's attorney moved for a mistrial. This motion was denied and the Court instructed the jury to disregard the question.
During the course of interrogation, questions should be propounded to prove facts by direct testimony emanating from the witness rather than by insinuations or innuendoes suggested by the interrogator. The suggestion that defendant could be an enforcer was bound to arouse in the minds of the jury a spirit of resentment *44 against defendant under the facts of this case. Perhaps the error was harmless. On the other hand, the injection of the word "enforcer" may well have tipped the balance of judgment against the defendant.
The first error of which defendant complains was of constitutional dimension and warrants reversal without consideration of the doctrine of harmless error. Jones v. State, supra. In any event the error should not be held harmless, as contended by the State, if there is a reasonable possibility that it might have contributed to the conviction. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Under no stretch of the imagination can it be said that the evidence was overwhelming against defendant. Justice and fairness require that a new trial be granted.
The decision of the District Court of Appeal is quashed and the cause is remanded to that Court with directions to set aside the judgment and sentence and further remand same for a new trial.
It is so ordered.
BOYD and McCAIN, JJ., concur.
OVERTON, J., concurs with an opinion.
ENGLAND, J., concurs with an opinion.
ROBERTS, J., dissents.
ENGLAND, Justice (concurring).
I fully concur with the majority's determination that commentary on a defendant's exercise of his right to remain silent[1] is a defect of constitutional dimension, warranting reversal without regard to the doctrine of harmless error. As this result marks a change from prior appellate decisions in this state, however, I would expressly clarify the relationship of this decision to those.
In Zerega v. State, 260 So.2d 1 (Fla. 1972), this Court intimated in dicta[2] that a quick and thorough admonition by the trial judge to disregard a comment on defendant's silence can cure any harm to the defendant. Today's decision abolishes any inference that an admonition can ever overcome the taint. In State v. Galasso, 217 So.2d 326 (Fla. 1968), this Court adopted in principle an absolute exclusionary rule for "`Miranda-tainted' pre-trial statements", but held from a review of the record that the particular comment concerning Mr. Galasso's silence was harmless error. Today's decision applies the principle discussed in Galasso, and it overrules the Court's holding in that case.[3]
Today's decision also affects the precedential significance of two district court decisions. As the majority opinion indicates, Jones v. State, 200 So.2d 574 (3d DCA Fla. 1967), is approved. On the other hand, Wright v. State, 251 So.2d 890 (1st DCA Fla. 1971), is disapproved.
*45 OVERTON, Justice (concurring).
I concur with both the majority opinion and the specially concurring opinion of Mr. Justice England.
The circumstances of the instant case are to a certain extent similar to the June 23, 1975, decision of the United States Supreme Court in United States v. Hale, ___ U.S. ___, 95 S.Ct. 2133, 45 L.Ed.2d 99. That court held it was prejudicial error for the prosecutor, on cross-examination of a defendant, to refer to the defendant's prior silence during an initial police interrogation.
In my opinion, the error in the instant case was prejudicial and not harmless.
NOTES
[1] "No person ... shall be compelled in any criminal case to be a witness against himself... ." U.S.Const., amend. V.
[2] The entire opinion in Zerega lacks precedential value. The only valid "holding" in the case is that petitioner Zerega's request for a writ of certiorari from the Fourth District Court of Appeal was denied for a lack of direct conflict with other Florida appellate decisions.
[3] It is possible to view the offensive comment in Galasso as being unrelated to the defendant's right to remain silent. Had the Court so characterized it there would be no need for clarification now. In fact, however, the Court both discussed and substantively treated the comment in the context of violating the defendant's right to remain silent. "Admittedly the admission of the testimony ... was error... ." 217 So.2d at 330. Accordingly, the decision that there was only harmless error stands in direct conflict with our decision today.