PER CURIAM.
Defendant brings this appeal urging that the trial court erred in allowing into evidence (1) police testimony during the prosecution’s direct examination and (2) defendant’s testimony during cross-examination of the fact that defendant remained silent during pre-arrest custody.
On April 12, 1976, defendant was informed against for the crime of attempted first degree murder.[1] Following a plea of not guilty and the waiving of a jury, defendant went to trial on May 11,1976. The case was recessed until June 23, 1976, at which time defendant was found guilty as charged, with adjudication entered on September 9, 1976. Defendant was sentenced to three years in the state penitentiary as a condition to a sentence of eight years probation.
A prosecution witness, Police Officer Lawrence Cochran, testified that while passing a gas station in his unmarked car, he heard gun shots, got out of his car, saw several people inside the station office door, one of whom was the defendant. Because the defendant had a gun in his hand, Cochran drew his own weapon and ordered defendant to drop his weapon. Then Cochran placed the defendant in custody, instructing another police officer to read defendant his rights. Cochran also testified that no statements were made to him at that time by the defendant or the victim, who was lying on the station office floor bleeding from a gunshot wound.[2]
During the defense’s case, defendant testified on his own behalf that he had been target practicing earlier on the day of the shooting, that he had the gun in his pocket while talking with the victim in the gas station office, that he did not know the gun was loaded (due to the fact that a friend of his had been target practicing with the gun earlier in the day), and that he drew his gun only when he thought he saw a shiny object when the victim started fumbling in his pocket and on top of the desk in the station office. Defendant also testified that he did not intend to shoot or kill the victim when he entered the station.
During cross-examination, the prosecution questioned defendant about the target practice:
“Q: Did you tell that to the police?
“A: I did not.
“Q: This is the first time you have told anybody that?
“A: Right.”
The prosecution also questioned defendant about the fact that he thought the gun was not loaded.
“Q: This is the first time you have told that to anybody?
“A: When I had taken the gun out?
“Q: This is the first time you have told anybody that Warren fired the gun that day?
“A: Right.”
During direct examination, the defendant testified that he gave a statement at the police station. Later, during cross-examination, this statement was admitted as State’s Exhibit No. 3 and the following question was asked:
“Q: [by the prosecution] When the police first arrived after the shooting, you did not go up to the police officers and tell them that you thought he was going to shoot you, and that is why you shot him? You did not say a word to them, did you?
*382 The defendant presents the following question on appeal:
“Whether the introduction by the prosecution on direct examination of a police officer of testimony that the defendant remained silent while in custody, and on cross-examination of the defendant of testimony that the defendant remained silent while in custody, constituted fundamental error and deprived the defendant of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.”
We hold that no violation of defendant’s constitutional rights appears on this record, and we affirm. Concerning the direct examination of the policeman, it is clear that the question about statements made “immediately after your arrival” refers to the time that the officer entered the scene and does not refer to the defendant’s failure to make a statement after he was given his Miranda warnings. In fact, the defendant did make a statement after his Miranda warnings. It was introduced into evidence. It should be noted that the defendant did not object to the question propounded to the officer and it may reasonably be concluded that the defendant concurred that the reference to any statement made “immediately after your arrival” referred only to a pre-Miranda statement. The admonition against the State’s use of the defendant’s silence in the face of accusations is limited to post-arrest silence. Cf. Lebowitz v. State, 343 So.2d 666 (Fla. 3d DCA 1977). See also the discussions in State v. Galasso, 217 So.2d 326 (Fla.1968); and Cridland v. State, 338 So.2d 30 (Fla. 3d DCA 1976).
Concerning the cross-examination of the defendant, the trial court properly permitted the prosecutor to cross-examine the defendant about an inconsistency in the version of events offered at trial, compared with the story presented to the police officers after defendant waived his Miranda rights. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), particularly footnote 11, which is as follows:
“11. It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant’s testimony as to his behavior following arrest. Cf. United States v. Fairchild, 505 F.2d 1378, 1383 (CA5 1975).”
Cf. Miller v. State, 343 So.2d 1292 (Fla. 3d DCA 1977).
On direct examination, the defendant testified that he gave a statement at the police station upon arrest. The actual statement was admitted into evidence at the trial. The statement was given to the police the day of the crime after defendant waived his Miranda warnings. On cross-examination, the prosecutor pointed out the discrepancies in the defendant’s statement at the trial, compared with the version given to the police on the day of the crime. Further, on cross-examination, the defendant stated that he had gone target practicing, a fact which he had not disclosed in the statement given to police. In conclusion, the prosecutor properly cross-examined the defendant concerning his inconsistent versions of the evidence.
Accordingly, finding that no reversible error has been demonstrated, the judgment and sentence are affirmed.
Affirmed.

. A prior information against the defendant for assault with intent to commit first degree murder was dismissed on April 12, 1976.

. “Q. [by the prosecution] Were any statements made to you at the scene, immediately after your arrival, about what had occurred?
“A. Not from the victim or the defendant.”