393 So.2d 584 (1981)
Milton MARSHALL, Appellant,
v.
STATE of Florida, Appellee.
No. UU-299.
District Court of Appeal of Florida, First District.
January 20, 1981.
Rehearing Denied February 27, 1981.
Michael J. Minerva, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and David Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
We reverse Marshall's conviction for burglary because the State elicited from a police officer testimony that Marshall stood on his Fifth Amendment privilege against self-incrimination and refused to answer the officers' on-scene custodial interrogation. The officer testified:
When the officers that apprehended him handcuffed him and brought him to my car, he was given his Miranda Warnings verbally and he did not want to talk to any of us at the time. He was placed in the car. We took him to the station... .
Marshall's motion for mistrial was denied, evidently on the ground that since Marshall made a voluntary exculpatory statement some 20 hours later, which the State later *585 proved, Marshall's initial silence was also provable. We disagree.
In Clark v. State, 363 So.2d 331, 333 (Fla. 1978), the Florida Supreme Court summarized the constitutional standard which is applicable here:
The Supreme Court of the United States, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), construed this right [against self-incrimination] to mean that the prosecution may not use at trial the fact that the defendant claimed his privilege to remain silent in the face of accusation. Indisputably, evidence of post-arrest silence is improper because it violates the defendant's right against self-incrimination. If properly preserved for appeal through objection, the admission of such testimony constitutes reversible error.
In Doyle v. Ohio, 426 U.S. 610, 617-618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 97-98 (1976), the Supreme Court elaborated its reasons for condemning such evidence as was elicited in this case about Marshall's election to exercise his Miranda rights:
Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested... . Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
In the case before us, Marshall was arrested at 4:40 a.m. outside the restaurant where he had been employed. Officer Sotuyo testified that he observed Marshall through a broken window inside the restaurant, getting ready to open a cigarette machine with a screwdriver in his hand. Marshall denied all this, and testified at trial that he was arrested outside the restaurant where he had gone to resolve with his employer a $20 shortage in his paycheck. Marshall gave a similar explanation to police at the jail, when finally Marshall did talk to them some 20 hours after his arrest.
Precisely because evidence of Marshall's silence when taken into custody was "insolubly ambiguous," suggesting either that he had not yet formulated his trumped-up story or that he simply chose to exercise the right of silence the police told him he had, the State's proof of Marshall's initial silence must be regarded not as probative in the sense first suggested, but as a penalty for the exercise of his constitutional right to be silent.
In Lofton v. Wainwright, 620 F.2d 74 (5th Cir.1980), the Court of Appeals decided a case involving a sequence of custodial events which was the reverse of those here. The court held that Lofton's Fifth Amendment rights were not improperly compromised by the State's proof that he ended his voluntary custodial statement to police by saying he did not want to say anything more until he had talked to a lawyer. The State adduced evidence of the entire colloquy to impeach an alibi offered by Lofton at the trial but not advanced during his custodial statement. Assuming for present purposes the correctness of Lofton, we think it stands for the proposition that the accused's voluntary statement while in custody may be adduced at trial by the State, and the defendant testifying to an alibi may be closely questioned why his custodial statement did not include the alibi. The Lofton court stated, 620 F.2d at 77:
In pursuing the point about what was not said during the police questioning, it was necessary, of course, for the prosecutor to bring out all that was said, including Lofton's final comment  that he would say nothing further without first talking to a lawyer.
Assuming the correctness of the last conclusion, we think it is quite another matter for the State to have elicited here Marshall's initial silence, for no reason but to suggest that Marshall, if he had a legitimate explanation, should have given it then.
*586 We likewise reject the State's assertion that the error was harmless because the evidence of Marshall's guilt was overwhelming. Even assuming the evidence was of that character  in which assumption we must entirely disregard Marshall's testimony  we are bound by Florida Supreme Court decisions that when the accused's custodial silence is improperly proved, and a motion for mistrial is made, reversal follows "without consideration of the doctrine of harmless error." Bennett v. State, 316 So.2d 41, 44 (Fla. 1975); Shannon v. State, 335 So.2d 5 (Fla. 1976).
REVERSED.
THOMPSON, J., and WOODIE A. LILES (Retired), Associate Judge, concur.