PER CURIAM.
Donovan, a juvenile, appeals his conviction of first degree murder. He argues the court erred in denying his motion to suppress certain statements, testimonial acts, and physical evidence because the detaining officers made no effort to contact his parents, contrary of Section 39.03 Florida Statutes (1979), after he was taken into custody. He also argues the court erred in denying his motion for mistrial after a prosecution witness improperly commented on his exercise of his right to remain silent. We affirm.
Donovan was taken into custody at his parents’ home on a Sunday evening. His step-father answered the door and was informed the officers wished to talk to Do *1307 novan regarding a homicide investigation and Donovan was then taken to police headquarters for questioning.
In Doerr v. State, 383 So.2d 905 (Fla. 1980), the Florida Supreme Court held that Section 39.03 Florida Statutes (1979) did not automatically require suppression of a juvenile’s confession because his parents were not notified he was being detained. The court found Section 39.03 was designed to notify the parents their children were being detained and was not intended to act as an exclusionary rule for juvenile confessions. In the present case we find that Donovan’s parents were notified of his detention since they were at home when he was taken into custody. K.L.C. v. State, 379 So.2d 455 (Fla. 1st DCA 1980). Therefore, his argument regarding his parents not being notified of his detention is without merit.
In his second point on appeal, Donovan challenges certain portions of Officer Smith’s testimony as being impermissible comments on his exercise of his right to remain silent. Any comment upon a defendant’s remaining silent or refusing to testify in the face of accusation is an error of constitutional dimension requiring a new trial without consideration of the harmless error doctrine. Shannon v. State, 335 So.2d 5 (Fla.1976); Bennett v. State, 316 So.2d 41 (Fla.1975). However, the defendant must make a timely objection and move for a mistrial in order to preserve the point for appellate review. Clark v. State, 363 So.2d 331 (Fla.1978).
During trial, Officer Smith testified that Donovan was brought to the Escambia County Investigation Division at 8:30 p. m. He remained there approximately five minutes before being taken across the street to the Division of Youth Services. The portions of Officer Smith’s testimony on direct examination which are challenged are as follows:
Q. During that time, where was he taken and what was done?
A. ... I walked into the office, at which time we read Tim his rights. Timmy denied having any knowledge of knowing what we were talking about.
At this point, defense counsel objected and moved for a mistrial. The motion was denied. Continuing later on direct examination:
Q. Now at that time did the defendant sign this rights waiver?
A. Yes, he did. No, sir. No, sir. Tim did not sign a rights form the first time I read it.
Smith then stated that Donovan remained at the sheriff’s office approximately three to five minutes before being taken across the street to the Division of Youth Services. Continuing on direct examination:
Q. And after you got over to the Division of Youth Services, what did y’all do?
A. ... I read Timmy his rights again.
Q. Did you read them from the same form that you just read from?
A. Yes, sir, I did.
Q. And did he indicate that he understood what his rights were?
A. If I could back up—
Q. Please do.
A. At the time while I was reading his rights the first time, Tim just looked at me. He never did answer me.. And then Lt. Rose started talking to him in reference about school — had he played hookey that day, or something like that.
He asked Lt. Rose, and the only question I remember Timmy asking, was what he just read to me — back to his rights— what he just said to me or read to me, does that mean that I can have a lawyer and it won’t cost me any money?
Lt. Rose says, “That’s exactly what it means.” And then Tim got quiet and he wouldn’t—
Q. (Interposing) Now, wait a second. Did he indicate that he understood those rights?
A. No, sir. Tim didn’t say anything.
Defense counsel again made a motion for mistrial which was denied. Continuing on direct examination:
Q. Officer Smith, then you went to the Division of Youth Services; is that correct?
*1308 A. Yes, sir.
Q. Across the street from the sheriff’s office?
A. Yes, sir.
Q. After you got there, did you read him his rights again?
A. Yes, sir, I did.
Q. Alright. Now, after you read his rights over there, did he indicate that he understood what those rights were?
A. Yes, sir, he did.
Q. How did he do that? Did you ask him if he understood what his rights were?
A. I was the one that was reading him his rights. I asked him, I said, “Do you understand what the question was that you asked the Lieutenant?” “Oh, yes, I understand all that. I just want to go ahead and get it off my chest. I am ready to tell you all about it.”
At this time, the state introduced testimony concerning appellant’s confession and the fact that he took investigating officers to the murder scene and retrieved the murder weapon and certain items of the victim’s clothing.
Although the state may introduce testimony concerning the incriminating statements he made, Donovan argues it was reversible error for the state to mention, as it did in the colloquy above, that he remained silent initially in the face of questioning. The state argues that the above testimony was properly admitted in order to show that Donovan was apprised of his constitutional rights and that he understood those rights before waiving them, contending the thrust of Officer Smith’s testimony reveals Donovan did not exercise his right to remain silent, but, in fact, chose to make a statement.
The Fourth District Court of Appeal was faced with a similar argument in Roban v. State, 384 So.2d 683 (Fla. 4th DCA 1980). In Roban, a deputy answered “I asked him if he wanted to say anything, and he said no.’ ” 384 So.2d at 684. Subsequent to this comment, the state introduced testimony of an oral inculpatory statement of Roban. The state argued the deputy’s comment could not be construed a comment on Ro-ban’s right to remain silent because he did not remain silent. The court held: “While conceding the logic of the State’s argument, we are required by the strictures of stare decisis to reject it.” (Cites omitted) The court apparently felt that any comment on Roban’s silence during questioning mandated reversal even though during the same phase of questioning he gave an inculpatory statement.
Donovan relies on Thompson v. State, 386 So.2d 264, 266 (Fla. 3d DCA 1980) where a prosecutor, in his opening statement, stated, “At this point the defendant got belligerent, Detective Fleites will tell you, and would not talk any further.” (Emphasis in original) Prior to this comment, the prosecutor was outlining the testimony that the detective would give regarding statements made by the defendant. The court found the defendant had obviously invoked his right to remain silent at the point he became belligerent and refused to talk. Therefore, the court held that any comment made after the defendant invoked his right to remain silent constituted reversible error. In Thompson, the court did recognize that there are exceptions to the prohibition of commenting on a defendant’s right to remain silent, but determined the facts of that case did not fit the exceptions. See Ragland v. State, 358 So.2d 100 (Fla. 3d DCA 1978).
In Brown v. State, 367 So.2d 616, 625 (Fla.1979), the Florida Supreme Court, in distinguishing that case from Bennett v. State, supra noted:
Bennett, however, articulated a prophylactic rule designed to obviate the possibility that a conviction could ever be obtained by the improper inference that a defendant’s silence evidenced guilt.
The Court found that Brown was simply not a case in which the state attempted to gain a conviction on the basis of the defendant’s silence.
In the case before us, we are convinced that this is not a case in which the state attempted to gain a conviction on the basis *1309 of the defendant’s silence. From the facts it is clear the defendant did not exercise his right to remain silent, but instead chose to make inculpatory statements. The gist of Officer Smith’s testimony elicited by the state was that appellant was apprised of his constitutional rights, understood those rights, and voluntarily waived his right to remain silent. We feel this case more appropriately fits within the rule of Williams v. State, 353 So.2d 588 (Fla. 3d DCA 1978) which held:
From the record, we find that the prosecutor was seeking to introduce a statement of the defendant into evidence, and it was necessary to first show that she had been properly warned of her constitutional rights, and that she knowingly and voluntarily waived those rights. The record fails to show that the defendant exercised her right to remain silent. Rather, the testimony shows that she did not seek to exercise the right to remain silent, and that her inculpatory statements were made freely, voluntarily and with full knowledge of her rights.
Similarly in United States v. Martinez, 577 F.2d 960 (5th Cir. 1978), the court looked at the totality of the officer’s testimony, rather than one isolated statement, in finding that there had been no impermissible comment on the defendant’s right to remain silent. In Martinez, the prosecution witness answered a question as to whether the defendants made any statement in his presence. He replied, “No, not at that time. We read them both their rights.” The prosecution then introduced the inculpatory statements made by the defendant. The court held:
Emphasizing the “not at that time” part of the testimony, defendants on appeal argue that it was improper and prejudicial for the Government [sic] witness thus to indicate that the defendants made statements after being warned of their Miranda rights. They argue that this comment raised an impermissible inference in the mind of the jury that some statement was made after the defendants had been warned according to Miranda. This remark cast a burden upon the defendants, they contend, to either produce the statement or permit the inference to remain with the jury that the statement was unfavorable. Of course, the government is not prohibited from introducing statements made by a defendant after receiving Miranda warnings. (Cites omitted). In this case, any dilemma the defendants may have felt to produce the statements or leave an inference with the jury that the statements were adverse was dissolved when the government itself offered the statements through the same witness. Therefore, no impropriety occurred, whether the testimony is viewed in part or as a whole.
We feel the rule enunciated in Williams v. State, supra and United States v. Martinez, supra, recognizing that the testimony should be taken as a whole, is more logical and consonant with reason than the strict prophylactic rule enunciated in Roban, supra.
We are aware of this court’s recent opinion in Marshall v. State, 393 So.2d 584 (Fla. 1st DCA 1981), in which we reversed a trial judge’s denial of a motion for mistrial regarding an officer’s comment that the defendant did not want to talk to anyone at that time. The trial court apparently denied the motion on the grounds that Marshall made a voluntary exculpatory statement some 20 hours later. The facts in Marshall are quite different from those of the instant case. In Marshall, it is clear the defendant did exercise his right to remain silent and the officer’s comment was an impermissible comment on that right. It was not until 20 hours later that Marshall decided to make a statement. In the instant case, appellant’s statement was given during his initial questioning. The statement was made approximately 10 minutes after he was taken to the sheriff’s office and advised of his rights. Under these facts, it is clear he did not exercise his right to remain silent. Therefore, Officer Smith’s testimony was not an impermissible comment on his right to remain silent. However, pursuant to Fla.R.App.P. 9.030(a)(2)(A)(vi), we certify we are in di *1310 rect conflict with Roban v. State, 384 So.2d 683 (Fla. 4th DCA 1980).
Donovan also relies upon the recently decided opinion of the United States Supreme Court in Edwards v. State of Arizona, - U.S. -, 101 S.Ct. 1880, 68 L.Ed.2d 378, which held that the trial court should have suppressed a confession once the accused requests counsel. The thrust of the opinion is that “it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.” - U.S. at -, 101 S.Ct. at 1885 (e.s.). At this juncture we note that, unlike the situation in Edwards, appellant here does not argue that the motion to suppress should have been granted because his request for counsel was denied, and interrogation was resumed; rather his point on appeal is that the trial court erred in denying his motion for mistrial after the prosecution witness improperly commented on the exercise of his right to remain silent. Thus the point raised does not challenge the constitutional issue involved in Edwards, and is one which normally would be considered waived.
Nevertheless, even if the point on appeal could be said to involve the question of whether the confession should have been suppressed due to the refusal of appellant to waive his right to counsel, we do not believe that the present record reveals, in the words of Edwards, that appellant “clearly asserted his right to counsel.” The fair import of Officer Smith’s testimony shows that Donovan never invoked his right to have counsel present during the interrogation; that his inquiry was directed solely to the question of whether a lawyer would be provided without any cost to him, and that once the police responded affirmatively, Donovan failed to pursue his inquiry further. This is a far cry from the situation in Edwards where the defendant, during interrogation, stated that he “wished an attorney before making any deal.”
AFFIRMED.
ERVIN, SHAW and WENTWORTH, JJ., concur.