386 So.2d 264 (1980)
Wilbert THOMPSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-513.
District Court of Appeal of Florida, Third District.
April 8, 1980.
Rehearing Denied August 1, 1980.
*265 Bennett H. Brummer, Public Defender and Rory S. Stein, Asst. Public Defender and Bart Eagle, Legal Intern, for appellant.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., SCHWARTZ, J., and MELVIN, WOODROW M. (Ret.), Associate Judge.
PER CURIAM.
Defendant, Wilbert Thompson, appeals his convictions for involuntary sexual battery, false imprisonment and unlawful possession of a weapon while engaged in a criminal offense. The evidence presented was as follows:
Ms. "D", the victim, was walking through a park in the early morning hours when she was approached by the defendant, Wilbert Thompson, who was carrying a knife. He took her to a park bathroom, ordered her to undress, placed his penis in her vagina three times and had her perform fellatio. Thompson then had her get dressed. They left the bathroom and walked back through the park toward her apartment. As they approached her husband's car which was parked in the driveway, Thompson asked Ms. "D" if she had the keys and if she could drive the car. She answered she had the keys but did not know how to drive the car because it was a stick shift. Thompson took the keys from her and as he unlocked the car and began to get into it, she ran up the stairs to the apartment building and screamed to her neighbors to call the police. Thompson jumped out of the car and fled. The neighbors summoned the police who later that day picked up Thompson who was positively identified by Ms. "D" as her assailant. Officer Fleites transported Thompson to the Miami Police Department where Thompson was read his Miranda rights. Fleites began to question Thompson who denied being in the area and raping Mrs. "D". When questioned further about attempting to steal the car, Thompson again denied involvement and answered "besides ... I don't know how to drive a four-speed". Fleites then asked Thompson how he knew the car in question was a four-speed as he (Fleites) did not mention it. At that point Thompson became belligerent and would not talk any further.
Thompson was charged with involuntary sexual battery, robbery, false imprisonment, and unlawful possession of a weapon while engaged in a criminal offense. Following his jury trial, he was acquitted of the robbery charge and found guilty on the other three counts.
On appeal, Thompson first urges as reversible error the denial of his motion for mistrial on the ground that the prosecutor in his opening statement to the jury commented upon his right to remain silent during custodial interrogation.
This point is based upon the following remarks of the prosecutor in his opening statement with regard to the testimony which would be given by Officer Fleites who interrogated Thompson after he was placed under arrest:
Detective Fleites asked him, "Mr. Thompson, were you in that park that night?
"No.
"Were you in that area?
"No.
"Do you know the victim, [Ms. `D']?
"No.
"Did you rape her?
"No.
"Did you know that this victim said that the man who raped her tried to take her car? Do you know anything about that?"
And at that point the Defendant did make a statement. He said, "No, I don't know. I didn't try to steal any car. Besides, I wouldn't try to steal her car. I don't know how to drive a four-speed."
Detective Fleites will tell you that when he questioned the Defendant he did not mention that car that the Mustang was a four-speed.

*266 So, Detective Fleites said to him, "How did you know it was a four-speed? I didn't tell you that. How do you know that?"
At this point the Defendant got belligerent, Detective Fleites will tell you, and would not talk any further  (Emphasis Supplied)
MR. LAMEL: Your Honor, I am going to object.
MR. EADE:  with Detective Fleites.
MR. LAMEL: I am going to request permission to approach the Bench.
THE COURT: Kathy.
[Thereupon, respective counsel and the reporter approached the Bench and the following proceedings were had out of the hearing of the jury.]
MR. LAMEL: Your Honor, based on the Prosecutor's last comment, I am going to move to strike those comments; request a curative instruction. However, I don't think that's sufficient. So, I am also going to move for a mistrial. The grounds for these motions are that he's violated the Defendant's right to remain silent after receiving his Miranda Rights. The fact that Mr. Thompson may have said some things to the police officer does not to take away his right to cut off questioning at any time and invoke his Fifth Amendment privilege.
By Mr. Eade commenting that the Defendant did, in fact, reinvoke his right he's prejudiced that right to remain silent in front of the jury.
MR. EADE: Your Honor, I would disagree. I would simply submit that once the Defendant started talking with the police the jury has every right to know what was said. He decided to remain silent once he's already spoken to the police and has given some statements to the police.
MR. LAMEL: Excuse me. I am sorry. I didn't mean to interrupt you. Are you finished?
MR. EADE: They have a right to know everything that occurred after he started speaking to the police and that it did terminate.
MR. LAMEL: Judge, the law says that the person has the right to cut off questioning at any time and invoke his Fifth Amendment at any time.
THE COURT: I am going to deny the motion for mistrial. However, I am also going to deny the request for a curative instruction at this moment. When that witness takes the stand, make sure it doesn't happen again. You can bring out that he becomes belligerent and what he said. But I don't want anything further about he remained silent and he wouldn't talk any more, and that kind of thing.
MR. EADE: Okay. If that's the Court's instruction.
* * * * * *
The established law is that if an individual, after Miranda warnings have been given, indicates in any manner at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease because at this point he or she has demonstrated that he intends to exercise his Fifth Amendment privilege. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Gamble v. State, 210 So.2d 238 (Fla.2d DCA 1968). Reversible error occurs in a jury trial when a prosecutor improperly comments upon or elicits an improper comment from a witness concerning the defendant's exercise of his right to remain silent in the face of accusation. Clark v. State, 363 So.2d 331 (Fla. 1978). Any comment upon a defendant's remaining silent or refusing to testify in the face of accusation is an error of constitutional dimension requiring a new trial without consideration of the doctrine of harmless error. Shannon v. State, 335 So.2d 5 (Fla. 1976); Thomas v. State, 342 So.2d 991 (Fla.3d DCA 1977).
In the case at bar, when Officer Fleites questioned Thompson as to how he knew the car in question was a four-speed (in that Fleites had not previously mentioned that fact), Thompson became belligerent and refused to talk any further. At that point, Thompson obviously had invoked his right to remain silent in the face of *267 accusation. See Davis v. State, 356 So.2d 1252 (Fla.4th DCA 1978). We, therefore, conclude that the prosecutor's remarks to the jury with regard to Thompson becoming belligerent and refusing to talk any further constituted an improper comment upon Thompson's right to remain silent. See Knight v. State, 374 So.2d 1065 (Fla.3d DCA 1979). Although there are exceptions to the prohibition of commenting on a defendant's right to remain silent, the facts of this case do not fall within those exceptions. See e.g., Ragland v. State, 358 So.2d 100 (Fla.3d DCA 1978)[1] and U.S. v. Fairchild, 505 F.2d 1378 (5th Cir.1975).[2]
The State argues that Thompson's refusal to answer the question of how he knew the car was a four-speed was an admission rather than an exercise of his right to remain silent. This argument is based upon the principle of law that an admission may be inferred from silence, where such silence is improper or unnatural. Martinez v. United States, 295 F.2d 426, 429 (10th Cir.1961); Falin v. State, 367 So.2d 675 (Fla.3d DCA 1979). Nevertheless, our Supreme Court has clearly held that "all `admissions' derived from a defendant's silence in the course of a custodial interrogation ... are absolutely barred from the defendant's trial". Brown v. State, 367 So.2d 616, 624 (Fla. 1979).
Last, we note that the trial judge recognized that the prosecutor had commented upon Thompson's exercising his right to remain silent as evidenced from the colloquy set out above.
Accordingly, the convictions herein appealed are reversed and the cause remanded for a new trial.
Reversed and remanded.

ON PETITION FOR REHEARING
Rehearing denied.
Before SCHWARTZ and DANIEL S. PEARSON, JJ., and MELVIN, WOODROW M. (Ret.), Associate Judge.
MELVIN, WOODROW M. (Ret.), Associate Judge, dissenting.
Upon consideration of appellee's motion for rehearing, I would recede from the original opinion and affirm the judgment and sentence appealed from. It is my view that the opinion of the Supreme Court of Florida in Antone v. Florida, 382 So.2d 1205 (1980), is authority for such affirmance.
The opinion in Antone reveals that he had hired a killer to assassinate a Tampa police officer. It was the contention of Antone, on appeal, that a comment made Agent Arwine, during the course of his trial, was a constitutionally impermissible comment on Antone's decision to remain silent. Antone had been advised of his rights under Miranda, had voluntarily made several statements, and had agreed to talk to Marlow Haskew (the hired killer) over the telephone. During that conversation Antone continuously asked, "Marlow, why did you do this to me?" Antone then had a mild heart attack and was carried to a hospital. Later, with permission of attending physician, Agent Arwine went into Antone's hospital room and gave testimony concerning the occurrences of that visit.
The statement of Agent Arwine that was complained of, was:
"I thereafter went into the room and was, during this period, from 1:10 until *268 1:20, the time I left the room, there was a nurse in and out of the room and Mr. Antone did not volunteer any information except he made one statement. Mr. Antone told me that he was a hundred percent Sicilian and Sicilians do not fink." (emphasis supplied)
In the case here considered, the Appellant, Thompson, had voluntarily answered several questions while he was being interrogated. The prosecutor, in his opening statement to the jury, advised the jury that the State expected to prove that the only information that Thompson had that the automobile in possession of "Mrs. D." was a stick-shift type, was given to Appellant by "Mrs. D"; that during interrogation Appellant denied that he had raped "Mrs. D", denied being in the area, denied attempting to steal the car, and stated, "besides . . I don't know how to drive a four-speed."
The prosecutor proceeded in his remarks to the jury by stating that the Appellant, having made such statement, was then asked by the officer how he knew the car was a four-speed type, because the officer had not mentioned that subject to him. It was then, according to the prosecutor, that the Appellant became belligerent and "would not talk any further."
As a matter of practical even-handed justice, I am unable to perceive any difference between "would not talk any further" made by the prosecuting attorney in the case here under consideration, and the statement in Antone that "Mr. Antone did not volunteer any information except he made one statement."
Mr. Thompson did not, obviously, receive a perfect trial, but he wasn't entitled to one. He was entitled to a fair trial, and he received that.
I would affirm the judgment and sentence appealed from.
NOTES
[1] In Ragland, defendant, after having been given his Miranda warnings, voluntarily answered a series of questions, only one of which he did not answer. This fact was brought out at trial. The court concluded that the defendant never had invoked his right to remain silent by virtue of the fact that he continued to answer questions after the question he did not answer. Therefore, no error was found.
[2] In Fairchild, defense counsel had given the jury the impression that the defendant had cooperated with the police. The prosecution was then permitted to introduce evidence that the defendant remained silent and refused to answer police questions in order to dispel the impression of cooperation.