405 So.2d 997 (1981)
Marshall PETERSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-398.
District Court of Appeal of Florida, Third District.
July 14, 1981.
Rehearing Denied November 25, 1981.
*998 Bennett H. Brummer, Public Defender and Michael Zelman, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, NESBITT and BASKIN, JJ.
SCHWARTZ, Judge.
Peterson appeals from his conviction of attempted burglary. We reverse for a new trial because improper references were made before the jury to the defendant's invocation of his Miranda rights to terminate and to refuse at any time to respond to custodial interrogation.
The defendant was apprehended at 12:30 in the morning inside a building which had been broken into. He was wearing gloves. The arresting officer testified that after being read his Miranda rights
the defendant said that he would answer some questions, but that he would stop when he didn't want to answer any more.
Defense counsel at once objected and moved for a mistrial. The motion was denied.[1]
The officer then related the following concerning the defendant's statement.

*999 Okay, I asked him what he was doing in the building, first of all. He said that he had been walking by and he saw the door open and he went in.
I asked him why he was wearing gloves and he stated that he used them in his work.
I asked him what kind of work he did. He said he was a roofer. I looked at my watch and asked him, `Well, it's 12:30 in the morning,' and he said, `Well, I use them in my work.' And I did not ask him any further questions than that.
Subsequently, in response to a question about later interrogation, the officer said,
A. I advised him that he had the Constitutional Right to remain silent. That he did not have to answer my questions and that he did have a right to have an attorney present. And I asked him if he wanted to answer a few questions for me. He said, `Okay, I will.'
Q. What questions did you ask him, if you recall?
A. Basically the same ones about the gloves more than anything and again he replied that he used them in his work, but he would not explain, you know, the time of day. [e.s.]
A motion for mistrial was again promptly made and denied.
It is clear that each motion for mistrial should have been granted, and that each denial requires reversal.
1. The Florida cases unequivocally establish the impropriety of any reference before the jury to the defendant's assertion of his fifth amendment rights to decline to answer police questioning. E.g., Bennett v. State, 316 So.2d 41 (Fla. 1975); Barnes v. State, 375 So.2d 40 (Fla. 3d DCA 1979). It is said in Miranda itself that "[t]he mere fact that [the defendant] may have answered some questions ... does not deprive him of the right to refrain from answering any further inquiries ..." Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966). Accordingly, even if interrogation is once begun, the defendant may cut it off at any time and for any reason. E.g., Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Thompson v. State, 386 So.2d 264, 266 (Fla. 3d DCA 1980), review granted, Fla.Case no. 58,599, January 14, 1981. Thus, when Peterson told the officer that "he would stop when he didn't want to answer any more," he did no more than assert a right which Miranda and the constitution had granted him. The officer's statement to the jury that he had done so was consequently indefensibly improper. Bennett v. State, supra.
2. The officer's subsequent reference to the actual exercise of this right to discontinue responding to questions, in the testimony that, although Peterson did tell him generally about the gloves, "he would not explain ... the time of day," both exacerbated the effect of the first improper statement and was independently erroneous. On this issue, Thompson v. State, supra, is controlling.[2] The opinion in Thompson fully discusses and squarely rejects the state's contention, reasserted here, that declining to answer further questions in the course of interrogation constitutes only an admission inferable from silence, rather than an exercise of the privilege against self-incrimination, to which reference is prohibited. We adhere to that conclusion.[3]
The state also argues that the references to Peterson's silence, even if incorrect, *1000 were merely "harmless error" and should therefore not result in reversal. We would be inclined to agree that, in the light of the overwhelming evidence of Peterson's guilt, the offending statements were indeed harmless in the sense that their presence or absence could not have affected the jury verdict of guilty. But it is very clear that this conclusion makes no difference in the resolution of the present case. This is because the supreme court has adopted a purely prophylactic rule that any reference to the assertion of fifth amendment rights, if preserved by a prompt motion for mistrial as in this case, ipso facto requires that a new trial be granted, specifically without consideration of whether so-called "harmless error" is or is not involved. Clark v. State, 363 So.2d 331 (Fla. 1978); Willinsky v. State, 360 So.2d 760 (Fla. 1978); Shannon v. State, 335 So.2d 5 (Fla. 1976); Bennett v. State, supra.[4] As in numerous previous instances, e.g., Jordan v. State, 400 So.2d 174 (Fla. 3d DCA Case no. 79-1606, opinion filed, June 23, 1981); Thompson v. State, supra; Ruiz v. State, 378 So.2d 101 (Fla.3d DCA 1979); Barnes v. State, supra; Knight v. State, 374 So.2d 1065 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980), we follow that rule.
Reversed and remanded.
NOTES
[1] Out of the jury's presence, the trial judge did caution the officer and the prosecutor as follows:

Now, I surely hope that at no point is there ever comment that he at any given point declined to answer anything or ceases answering or gave any indication that he was ceasing answering or anything that even smells of it.
The trial judge issued similar admonitions, with similar lack of effect, in Thompson v. State, infra, at 386 So.2d 264, 266, and Ruiz v. State, 378 So.2d 101, n. 1 (Fla. 3d DCA 1979).
[2] The statement in Thompson that the defendant "would not talk any further," and the one here that "he would not explain ... the time of day" are conceptually identical.
[3] As indicated by the majority's denial of rehearing in Thompson, we do not believe, as Judge Melvin did in his dissenting opinion, 386 So.2d at 267, that Antone v. State, 382 So.2d 1205 (Fla. 1980), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980) is contrary to this holding. The statement challenged in Antone was simply that

Mr. Antone did not volunteer any information except he made one statement. Mr. Antone told me that he was a hundred percent Sicilian and Sicilians do not fink.
The supreme court found
this testimony permissible as it recounted Antone's affirmative statement. In fact, Antone did not stand mute; Arwine's testimony comments not on Antone's silence but on what he said.
382 So.2d at 1213. The contrast between these circumstances and those in Thompson and this case is evident. In Antone there was no reference whatever to the crucial factor that the defendant had asserted his fifth amendment right to decline to answer an inquiry during the course of questioning and, indeed, no indication that any such questioning had ever taken place. Since, decisively unlike our cases, the fact that a Miranda situation was involved was not even implied to the jury, the Clark-Bennett line of cases was plainly inapplicable. (Because the supreme court has granted review in Thompson on the basis of an asserted conflict with Antone, it will soon be known whether our analysis of the distinctions between the cases is a correct one.)
[4] Contrary to the appellee's assertion, the supreme court did not in any way depart from this doctrine in Sireci v. State, 399 So.2d 964 (Fla. Case no. 50,905, opinion filed, April 9, 1981). In that case, the defendant did not preserve the fifth amendment point at trial and was thus not entitled to an "automatic reversal" under Clark v. State, supra. The court then found that the reference was, in any event, only "harmless error" under Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). It is plain that the discussion of this issue concerned only whether fundamental error was committed under the United States constitution so as to require reversal in the absence of objection. As is shown by the total lack of reference to Shannon and the similar cases holding that "harmless error" is irrelevant under Florida law when there is a timely motion for mistrial, Sireci has no effect upon that rule.