451 So.2d 487 (1984)
Angelo John DiGuilio, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1235.
District Court of Appeal of Florida, Fifth District.
March 29, 1984.
Rehearing Denied June 14, 1984.
*488 John W. Tanner of Tanner, Lambert, & Miller, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Chief Judge.
Defendant Angelo John DiGuilio appeals his judgment and sentence for conspiracy to traffic in cocaine, a second degree felony, following a jury trial. We reverse for a new trial because we conclude that the trial court erred in denying defendant's motion for mistrial after the prosecutor elicited from a witness testimony concerning defendant's exercise of his right to remain silent.
We will not burden this opinion with a lengthy recitation of the facts, except to say for the benefit of the parties that there is sufficient evidence to support the conviction, eliminating the impermissible testimony. One of the officers testifying for the State, when being questioned about DiGuilio's participation and apprehension was asked if DiGuilio had been read his Miranda warnings following his arrest. The officer replied that he had not personally read the warnings, but had heard a fellow officer read them. The witness paraphrased the content of the warnings, and then the following took place:
(By the Prosecutor)
Q: Did he indicate whether or not he would be willing to answer any questions?
A: At that point, he didn't say.
Q: Did Mr. DiGuilio make any statements to you at that time?
A: Only to the effect that the driver of the car picked him up at his home and he had come directly to the Howard Johnson's. That he lived in South Daytona. He refused to give me an address. He refused to identify the name of the driver. He also indicated to me that the driver had parked the car and walked north to the southeast doors to the motel and had entered. After that, he advised me he felt like he should speak to his attorney. And there was no further questioning.
Q: No further questioning?
A: No.
At that point, defense counsel interrupted, asked the court to excuse the jury, and promptly moved for a mistrial on the ground that the foregoing testimony was an impermissible comment on defendant's right to remain silent. The motion was denied and the trial continued.
The law is clear that if an individual, after being given Miranda warnings, indicates in any manner at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease because the fifth amendment privilege has been exercised. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Thompson v. State, 386 So.2d 264 (Fla. 3d DCA 1980), pet. for rev. denied, 401 So.2d 1340 (Fla. 1981). Reversible error occurs in a jury trial when a prosecutor improperly comments upon or elicits an improper comment from a witness concerning the defendant's exercise of his right to remain silent in the face of accusation, without consideration of the harmful effect of such comment or testimony. Miranda v. Arizona, *489 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 47 L.Ed.2d 91 (1976); Clark v. State, 363 So.2d 331 (Fla. 1978); Shannon v. State, 335 So.2d 5 (Fla. 1976); Washington v. State, 388 So.2d 1042 (Fla. 5th DCA 1980).
The State argues that this testimony was not an improper comment on defendant's right to remain silent, but we must disagree. When the prosecutor asked the officer if defendant indicated whether or not he would answer any questions, he should have known what the answer would be, and the answer given: "at that point, he didn't say" is a direct comment on defendant's right to remain silent. The effect of that reply was further exacerbated by the questions and answers which followed, which advised the jury that defendant refused to give his address or to identify the driver of the car he was in and that he then indicated his desire to talk to his attorney. A defendant should not have his silence or his desire to confer with an attorney used as evidence against him when he has been told, as he must be, that he has those rights.
In Peterson v. State, 405 So.2d 997 (Fla. 3d DCA 1981), a judgment of conviction for attempted burglary was reversed because the arresting officer testified that defendant, after being read his Miranda rights, said that "he would answer some questions, but that he would stop when he didn't want to answer any more." The Peterson court said:
... the supreme court has adopted a purely prophylactic rule that any reference to the assertion of fifth amendment rights, if preserved by prompt motion for mistrial as in this case, ipso facto, requires that a new trial be granted, specifically without consideration of whether so-called "harmless error" is or is not involved.
Id. at 1000. See also, Shannon v. State, 335 So.2d 5 (Fla. 1976).
In Burwick v. State, 408 So.2d 722 (Fla. 1st DCA 1982), the court reversed a conviction on charges of sexual battery and burglary with assault because the officer testified that the defendant had said that he did not want to make a statement and wanted to talk to a lawyer.
In Bain v. State, 440 So.2d 454 (Fla. 4th DCA, 1983), a conviction for burglary was reversed when the officer testified that after the defendant was given his Miranda warnings and was asked if he wished to answer questions, he indicated that he was unsure of himself. He then gave the officer two different names and an address. In holding that this testimony violated defendant's constitutional right to remain silent, the court said:
... The law is clear that a defendant's invocation of his right to remain silent may not be used against him. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Bennett v. State, 316 So.2d 41 (Fla. 1975). In Trafficante v. State, 92 So.2d 811 (Fla. 1957), the Supreme Court prohibited any such comment, without regard to the character of the comment, or the motive or intent with which it is made. If such a comment is subject to an interpretation which would bring it within the constitutional prohibition, regardless of its susceptibility to a different construction, it constitutes reversible error.
Although the State argues that the testimony here is subject to the interpretation that it does not comment on defendant's exercise of his rights, it can hardly be doubted that it is certainly subject to the interpretation that he would not answer questions and wanted to talk to his lawyer. If comment by the prosecutor or testimony elicited by the State is subject to the interpretation which would bring it within the constitutional prohibition, that constitutes reversible error notwithstanding its susceptibility to a different interpretation. Trafficante v. State, 92 So.2d 811 (Fla. 1957); Bain.
We find no merit in any of the other issues raised by appellant, although one issue warrants discussion. Following his arrest, appellant and another person arrested *490 in the transaction were placed in the rear seat of a police car. No one else was in the car. They were not aware of a hidden tape recorder in the car and appellant's incriminating conversation was recorded and later introduced by the State at trial, over appellant's objections, which we hold were properly overruled. An earlier motion to suppress the tape had also been properly denied.
Appellant argues here, as he did below, that the tape recording of his conversation with the other arrestee was a violation of his fourth amendment privilege against unreasonable searches and seizures and his fifth amendment right against self-incrimination. Neither of these constitutional rights is implicated here.
In Brown v. State, 349 So.2d 1196 (Fla. 4th DCA 1977), the court held that a tape recording made under similar circumstances was admissible. The Brown court held, and we agree, that once a person is taken into custody by law enforcement authorities, his right to privacy has been effectively diminished and he has no reasonable expectation that his conversation will be private. Certainly, no reasonable expectation of privacy exists while one is detained in the rear seat of a police vehicle. Neither is the recording of the conversation proscribed by the provisions of Chapter 943, Florida Statutes (1981), as an oral communication, because section 943.02(1) defines oral communications within the statute to include only those which are uttered under circumstances justifying an expectation of privacy. No such expectation is justified here.
Neither is the spontaneous and voluntary conversation between defendant and his alleged co-conspirator a violation of defendant's fifth amendment right to remain silent. The statements made by defendant were not made in response to custodial interrogation. As a matter of fact, the police were not present in the car and anything appellant said was voluntary on his part. Absent custodial interrogation, spontaneous and voluntary statements by defendant to his alleged co-conspirator violate none of the procedural safeguards described in Miranda v. Arizona.
In Stanley v. Wainwright, 604 F.2d 379 (5th Cir.1979), Stanley sought federal habeas corpus on the ground that the admission into evidence of his tape recorded statements made in the back seat of a police car violated his fifth amendment rights. In denying relief, the court said:
... Here there was no questioning at all; the appellant's conversation arose spontaneously while the policemen were physically absent. The policemen's ruse was not the equivalent of inquiry. Miranda was designed to curb unfair methods of custodial interrogation; it does not protect spontaneous utterances made by detainees mistakenly believing that they will not be overheard, nor forbid police, under fifth amendment sanctions, from setting snares.
Id. at 382.
To borrow a phrase from United States v. Skipwith, 482 F.2d 1272 (5th Cir.1973), the government has no duty to catch criminals sportingly or according to any game book rule, so long as a suspect's constitutional rights are observed. The tape recording was properly admitted here.
Because of the improper comment by the State's witness on defendant's constitutional right to remain silent in the face of interrogation, the judgment of conviction is reversed, the sentence set aside, and the cause remanded for a new trial.
REVERSED and REMANDED.
COWART, J., and DAVIS, S.J., Associate Judge, concur.

ON PETITION FOR REHEARING
ORFINGER, C.J.
Both the defendant and the State move for rehearing. The defendant's motion is without merit and is denied. The State's motion requires comment.
The State contends that in State v. Murray, 443 So.2d 955 (Fla. 1984) the Florida Supreme Court has receded from the rule *491 expressed in Shannon v. State, 335 So.2d 5 (Fla. 1976) and Bennett v. State, 316 So.2d 41 (Fla. 1975) that
... any comment on an accused's right to remain silent is reversible error, without regard to the harmless error doctrine.
It is the State's contention that in relying on United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Murray court has approved the applicability of the "harmless error" doctrine to cases where it is alleged that there was improper comment on the exercise by the accused of his right to remain silent.
For an excellent analysis of the same argument raised by the State, see the opinion written by Judge Cobb in Rowell v. State, 450 So.2d 1226 (Fla. 5th DCA May 24, 1984). Because both Murray and Hasting deal with the effect of prosecutorial comment at trial on the defendant's failure to testify, and do not discuss the effect of a comment on the defendant's exercise of his right to remain silent when faced with an accusation, we cannot conclude that Murray has specifically overruled the line of cases which include Shannon and Bennett. However, the State's position is arguable and should be addressed by the supreme court.
Our review of the record here convinces us that if the harmless error rule can be applied to the facts of this case, the judgment of conviction should be affirmed, because it appears to us that the error on which we based a reversal was harmless beyond any reasonable doubt. Our reversal was based strictly on what we perceive to be the per se rule of Bennett, as approved in Shannon and later in Donovan v. State, 417 So.2d 674 (Fla. 1982).
Consequently, we deny the State's motion for rehearing and we certify to the Florida Supreme Court, as a question of great public importance, the following:
Has the Florida Supreme Court, by its agreement in State v. Murray, 443 So.2d 955 (Fla. 1984), with the analysis of the supervisory powers of appellate courts as related to the harmless error rule as set forth in United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), receded by implication from the per se rule of reversal explicated in Donovan v. State, 417 So.2d 674 (Fla. 1982); Shannon v. State, 335 So.2d 5 (Fla. 1976); and Bennett v. State, 316 So.2d 41 (Fla. 1975)?
PETITION FOR REHEARING DENIED. QUESTION CERTIFIED.
COWART, J., and S.J. DAVIS, Associate Judge, concur.