491 So.2d 1129 (1986)
STATE of Florida, Petitioner,
v.
Angelo John DiGUILIO, Respondent.
No. 65490.
Supreme Court of Florida.
July 17, 1986.
*1130 Jim Smith, Atty. Gen., and Richard B. Martell and Sean Daly, Asst. Attys. Gen., Daytona Beach, for petitioner.
John W. Tanner, Daytona Beach, for respondent.

ON REHEARING GRANTED
SHAW, Justice.
Respondent petitions for rehearing of our decision of August 29, 1985, wherein we held that comments on a defendant's silence were subject to harmless error analysis and remanded the case to the district court for application of the harmless error analysis. We reaffirm our holding but grant rehearing in order to apply harmless error analysis and to more fully explicate the application of harmless error. We substitute this opinion for our earlier opinion.
The following question has been certified as being of great public importance:
Has the Florida Supreme Court, by its agreement in State v. Murray, 443 So.2d 955 (Fla. 1984), with the analysis of the supervisory powers of appellate courts as related to the harmless error rule as set forth in United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), receded by implication from the per se rule of reversal explicated in Donovan v. State, 417 So.2d 674 (Fla. 1982); Shannon v. State, 335 So.2d 5 (Fla. 1976); and Bennett v. State, 316 So.2d 41 (Fla. 1975)?
DiGuilio v. State, 451 So.2d 487, 491 (Fla. 5th DCA 1984). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and apply the harmless error doctrine to a comment on a defendant's remaining silent.
A jury convicted Angelo John DiGuilio of conspiracy to traffic in cocaine. The district court reversed, finding that the prosecutor elicited testimony from a witness which could be interpreted by the jury as a comment on DiGuilio's right to remain silent. Applying Donovan, Shannon, and Bennett, the district court found the comment to be per se grounds for reversal.
The comment in question arose during the prosecution's examination of a police officer to determine whether DiGuilio had been read his Miranda[1] warnings. The following exchange then took place:

*1131 Q. [Prosecutor] Did he indicate whether or not he would be willing to answer any questions?
A. At that point, he didn't say.
Q. Did Mr. DiGuilio make any statements to you at that time?
A. Only to the effect that the driver of the car picked him up at his home and he had come directly to the Howard Johnson's. That he lived in South Daytona. He refused to give me an address. He refused to identify the name of the driver. He also indicated to me that the driver had parked the car and walked north to the southeast doors to the motel and had entered. After that, he advised me he felt like he should speak to his attorney. And there was no further questioning.
Q. No further questioning?
A. No.
The district court found the statement, "After that, he advised me he felt like he should speak to his attorney," susceptible to the conclusion that it was a comment on the right to remain silent. The fact that DiGuilio answered a few questions first does not constitute a waiver of his fifth amendment privilege. Miranda states that an individual can invoke his right to remain silent "at any time prior to or during questioning." Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 1627-28, 16 L.Ed.2d 694 (1966); Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Thus, comment on a defendant's invocation of his right to remain silent after he has answered some questions is constitutional error. See Peterson v. State, 405 So.2d 997 (Fla. 3d DCA 1981); Thompson v. State, 386 So.2d 264 (Fla. 3d DCA 1980), review denied, 401 So.2d 1340 (Fla. 1981). We agree that the comment here is fairly susceptible of being interpreted by the jury as a comment on silence. State v. Kinchen, 490 So.2d 21 (Fla. 1985).
Florida has long followed a per se reversal rule when a prosecutor comments on a defendant's failure to testify. Gordon v. State, 104 So.2d 524 (Fla. 1958); Trafficante v. State, 92 So.2d 811 (Fla. 1957); Way v. State, 67 So.2d 321 (Fla. 1953); Rowe v. State, 87 Fla. 17, 98 So. 613 (1924). Prior to Miranda, however, Florida followed the rule that a defendant's silence, when faced with accusatory statements while in custody, was admissible as evidence tending to show guilt. Albano v. State, 89 So.2d 342 (Fla. 1956). The per se reversal rule for comments on the right to remain silent was first adopted in Jones v. State, 200 So.2d 574 (Fla. 3d DCA 1967). This Court adopted Jones and the per se rule in Bennett v. State, 316 So.2d 41 (Fla. 1975), and has approved the rule in other cases. E.g., Donovan v. State, 417 So.2d 674 (Fla. 1982); Shannon v. State, 335 So.2d 5 (Fla. 1976). Because comment on a defendant's failure to testify and comment on a defendant's silence violate the same constitutional provision and are grounded on the same rationale, we reexamine both the Rowe and Jones line of cases to determine if a rule of per se reversal should be followed.
The problem of prosecutorial comment on a defendant's failure to testify is of fairly recent vintage. Under the common law at the time the United States and Florida Constitutions were adopted, an accused not only could not be compelled to testify, but was considered to be incompetent to testify even if he wished to do so. Because of this legal disability, no inference could be drawn from a failure to testify and there could be no occasion for a prosecutor to comment on the failure to testify. Obviously the framers of the constitutions did not contemplate such prosecutorial comments when they authored the constitutional right not to be compelled to testify against oneself. In the late nineteenth century, a move developed to remove the common law disability which prevented an accused from testifying. In 1878, Congress passed an act[2] granting the accused a statutory *1132 right, upon request, to testify in federal courts. The act also provided that failure to make such request would create no presumptions against the accused. The meaning of the "no presumptions" language was tested in Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893), where the Court held that a prosecutor's comment on an accused's failure to testify violated the statutory provision and reversed the conviction.[3] In 1895, the Florida Legislature enacted chapter 4400, Laws of Florida[4] which for the first time not only granted an accused in Florida the right to testify[5] but, presumably in light of the Wilson decision, specifically provided that no prosecutor would be permitted to comment before the court or jury on the failure of the accused to testify.
It is from the 1895 legislative act that the Rowe line of cases sprung. In Jackson v. State, 45 Fla. 38, 34 So. 243 (1903), this Court reversed a conviction because of a prosecutor's comment on an accused's failure to testify. In so doing, we grounded the reversal on violation of statute, not the Florida Constitution, and noted that no curative instructions had been given to the jury. Further, and even more significantly, although we held that the particular comment in the case at hand was reversible error, we specifically noted that comments on an accused's failure to testify were not per se reversible error:
There may be some circumstances where reference to the fact may be made in such form as not to constitute reversible error, as in the case of State v. Mosley, 31 Kan. 355, 2 Pac. 782, but the remarks made in this case are not of that character.
Jackson, 45 Fla. at 39, 34 So. at 243 (citations omitted). The holding that such comments were not per se reversible was made more explicit in Steffanos v. State, 80 Fla. 309, 86 So. 204 (1920), where we held:
During the argument of counsel the prosecuting attorney commented upon the failure of the accused to testify in his behalf. Exception was taken to the remarks of counsel by the defendant, and the court corrected the prosecuting attorney, and instructed the jury to disregard the statement; but he did so in such words as to render the correction of little value to the defendant. While we do not hold the transaction, as it appears to have occurred, reversible error, we think that, when prosecuting attorneys do violate the plain language of the statute, their remarks should be expunged so far as possible, and removed from consideration by the jury.
80 Fla. at 315, 86 So. at 206. It is thus clear that a prosecutor's comments on an accused's failure to testify was not per se reversible error as of 1920 when Steffanos was decided. This changed with the Rowe case.
In Rowe, the prosecutor made repeated references to an accused's failure to testify including one where the trial court failed to rebuke the prosecutors and which we characterized as
"an adroit and insinuating attempt, indirectly to accomplish what could not have been accomplished by a direct statement. The statute does not permit such evasions of its manifest purpose."
*1133 Rowe, 87 Fla. at 30, 98 So. at 618, quoting from State v. Moxley, 102 Mo. 374, 14 S.W. 969 (1890). We rejected the state's argument that comments on failure to testify could be cured by an instruction to the jury because "violation by the prosecuting officer of a statute such as ours cannot be cured by the court instructing the jury to disregard his comment." Rowe, 87 Fla. at 29, 98 So. at 617. Accordingly,
For the violations of the statute by the prosecuting officers of the state, as pointed out herein, and for that only, the judgment is reversed, and a new trial granted.
87 Fla. at 32, 98 So. at 618 (emphasis supplied).
In a series of cases in the 1950's, this Court again addressed the question of whether a harmless error statute, section 54.23, Florida Statutes (1951),[6] could be applied to a comment on an accused's failure to testify in violation of section 918.09. In Way v. State, 67 So.2d 321 (Fla. 1953), we concluded that section 54.23 was not applicable to a violation of section 918.09 and reversed the conviction. In Trafficante v. State, 92 So.2d 811 (Fla. 1957), we relied on Way and Rowe and held that a prosecutor's comment violated section 918.09. We again addressed the issue of prosecutorial comment on an accused's failure to testify in Gordon v. State, 104 So.2d 524 (Fla. 1958). Obviously, however, we were feeling considerable discomfort at our rule of per se reversal and commented at length that we were only following such a rule because section 918.09 required that we do so:
Here again we have a specific legislative prescription of a right to be accorded to those under prosecution for crime. Whether we as judges deem the rule to be wise and salutary is of no consequence at all and we assume no responsibility for it. The Legislature made the rule and we must follow it, at least until the Legislature changes it.
... .
Our responsibility as an appellate court is to apply the law as the Legislature has so clearly announced it. We are not endowed with the privilege of doing otherwise regardless of the view which we might have as individuals. Way v. State, Fla. 1953, 67 So.2d 321. Also see Trafficante v. State, Fla. 1957, 92 So.2d 811. The harmless error statute, Section 54.23, Florida Statutes, F.S.A., does not apply to this type of error.
Id. at 540-41.
It is clear that Rowe, Way, Trafficante, and Gordon rest on statutory construction, i.e., did the legislature intend that the harmless error statute, section 54.23, be applicable to the statutory prohibition against comment on failure to testify, section 918.09. We concluded that the harmless error statute did not apply for two reasons. First, the language in section 918.09 was mandatory  "nor shall any prosecuting attorney be permitted before the court or jury to comment on the failure of the accused to testify in his own behalf." Second, section 54.23 was limited to errors relating to "misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure." These were the only two statutes at issue when Rowe was decided and, arguendo, Rowe was correct in holding that the legislature did not intend that harmless error analysis be applied to prosecutorial comments on failure to testify. Way, Trafficante, and Gordon, however, are another matter because, after Rowe issued, the legislature enacted chapter 19554, section 309, Laws of Florida (1939), codified as section 924.33 (1941 and thereafter).[7] Section 924.33 *1134 differs from section 54.23 in two significant respects. First, it provides that harmless error analysis is applicable to all judgments regardless of the type of error involved. Second, it explicitly provides that there shall be no presumption that errors are reversible unless it can be shown that they are harmful. Thus, Way, Trafficante, and Gordon, which purport to rely on legislative intent, are directly contrary to legislative intent as expressed in the plain words of section 924.33.[8]
Section 924.33 respects the constitutional right to a fair trial free of harmful error but directs appellate courts not to apply a standard of review which requires that trials be free of harmless errors. The authority of the legislature to enact harmless error statutes is unquestioned.[9] Contraposed to this legislative authority, the courts may establish the rule that certain errors always violate the right to a fair trial and are, thus, per se reversible. To do so, however, we are obligated to perform a reasoned analysis which shows that this is true, and that, for constitutional reasons, we must override the legislative decision. It is clear that the rule of Way, Trafficante and Gordon is not grounded on the constitution.[10] Although we did not explicitly say so, it is also clear that Rowe, Way, Trafficante and Gordon were implicitly overruled by State v. Marshall, 476 So.2d 150 (Fla. 1985), wherein we adopted the harmless error rule for comments on a defendant's failure to testify.
Florida's per se reversal rule on comments on a defendant's silence arose from a separate line of cases. In Bennett v. State, 316 So.2d 41 (Fla. 1975), relying on Jones v. State, 200 So.2d 574 (Fla. 3d DCA 1967), we held that comments on an accused's post-arrest silence are per se reversible. Accord Donovan v. State, 417 So.2d 674 (Fla. 1982); Shannon v. State, 335 So.2d 5 (1976). The holding in these cases was grounded on the fifth amendment to the United States Constitution and our interpretation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As it applies here, Miranda stands for the proposition that comment on an accused's post-arrest silence is constitutional error; it does not stand for the proposition that such error is per se reversible. This was made clear in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and its progeny but, although we cited Chapman in Bennett, we overlooked its holding that automatic reversal of a conviction is only appropriate when the constitutional right which is violated vitiates the right to a fair trial. Chapman holds that comment on failure to testify is not constitutionally subject to automatic reversal because it does not always vitiate the right to a fair trial and the harmless error analysis should be applied. We followed our interpretation of Miranda in Donovan and Shannon. It was not until we issued State v. Marshall, 476 So.2d 150 (Fla. 1985), and State v. Murray, 443 So.2d 955 (Fla. 1984), that we adopted the correct rule from Chapman and Hasting that constitutional errors, with rare exceptions, are subject to harmless error analysis.
*1135 The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
In comparing the per se reversible rule and the harmless error rule, and determining their applicability, it is useful first to recognize that both rules are concerned with the due process right to a fair trial. The problem which we face in applying either rule is to develop a principled analysis which will afford the accused a fair trial while at the same time not make a mockery of criminal prosecutions by elevating form over substance.
The dissenters apparently believe that the rule of harmless error cannot cope with comments on post-arrest silence or failure to testify and that only a per se rule will suffice. This view ignores the far-ranging application of the harmless error rule and does not recognize that a per se rule is nothing more than a determination that certain types of errors are always harmful, i.e., prejudicial. Per se reversible errors are limited to those errors which are "so basic to a fair trial that their infraction can never be treated as harmless error." Chapman, 386 U.S. at 23, 87 S.Ct. at 827-28. In other words, those errors which are always harmful. The test of whether a given type of error can be properly categorized as per se reversible is the harmless error test itself. If application of the test to the type of error involved will always result in a finding that the error is harmful, then it is proper to categorize the error as per se reversible. If application of the test results in a finding that the type of error involved is not always harmful, then it is improper to categorize the error as per se reversible. If an error which is always harmful is improperly categorized as subject to harmless error analysis, the court will nevertheless reach the correct result: reversal of conviction because of harmful error. By contrast, if an error which is not always harmful is improperly categorized as per se reversible, the court will erroneously reverse an indeterminate number of convictions where the error was harmless. See for example, Delaware v. Van Arsdall, ___ U.S. ___, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); United States v. Mechanik, ___ U.S. ___, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); United States v. Lane, ___ U.S. ___, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).
The unique and only function of the rule of per se reversal is to conserve judicial labor by obviating the need to apply harmless error analysis to errors which are always harmful. It is, in short, a rule of judicial convenience. The unique function of the harmless error rule is to conserve judicial labor by holding harmless those errors which, in the context of the case, do not vitiate the right to a fair trial and, thus, do not require a new trial. Correctly applied in their proper spheres, the two rules work hand in glove. Both provide an equal degree of protection for the constitutional right to a fair trial, free of harmful error.
In Florida, we have adopted a very liberal rule for determining whether a comment constitutes a comment on silence: any comment which is "fairly susceptible" of being interpreted as a comment on silence will be treated as such. Kinchen; David v. State, 369 So.2d 943 (Fla. 1979). One authority has said that "[c]omments or arguments which can be construed as relating to the defendant's failure to testify are, obviously, of almost unlimited variety."[11] *1136 The "fairly susceptible" test treats this variety of arguable comments as comments on silence. We are no longer only dealing with clear-cut violations where the prosecutor directly comments on the accused's silence and hammers the point home as in Rowe v. State, 87 Fla. 17, 98 So. 613 (1924). Comments on silence are lumped together in an amorphous mass where no distinction is drawn between the direct or indirect, the advertent from the inadvertent, the emphasized from the casual, the clear from the ambiguous, and, most importantly, the harmful from the harmless. In short, no bright line can be drawn around or within the almost unlimited variety of comments that will place all of the harmful errors on one side and the harmless errors on the other, unless the circumstances of the trial are considered. We must apply harmless error analysis to the "fairly susceptible" comment in order to obtain the requisite discriminatory capacity.
The combination of the fairly susceptible test and the harmless error rule is a happy union. It preserves the accused's constitutional right to a fair trial by requiring the state to show beyond a reasonable doubt that the specific comment(s) did not contribute to the verdict. At the same time, it preserves the public and state interest in finality of verdicts which are free of any harmful error. In view of the heavy burden the harmless error rule places on the state, it further serves as a strong deterrent against prosecutors advertently or inadvertently commenting on an accused's silence. It cannot be rationally argued that commenting on an accused's silence is a viable strategy for obtaining convictions. By contrast, a union of the fairly susceptible test and the rule of per se reversal is pernicious in that the former has little, if any, discriminatory capacity and the latter has none. The union which the dissenters urge substitutes mechanics for judgment in the style of nineteenth century English and American appellate courts where error, no matter how harmless, equaled reversal.[12]
The most perceptive analysis of harmless error principles of which we are aware is that of former Chief Justice Traynor of the California Supreme Court. See Roger J. Traynor, The Riddle of Harmless Error (1970), and the dissent to People v. Ross, 67 Cal.2d 64, 429 P.2d 606, 60 Cal. Rptr. 254 (1967) (Traynor, C.J. dissenting), rev'd sub nom, Ross v. California, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968). In his dissent, Chief Justice Traynor maintained that comments on Ross's failure to testify were harmful and that the majority misunderstood and misapplied the Chapman harmless error test. Chief Justice Traynor argues, and we agree, that harmless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence. In a pertinent passage, Chief Justice Traynor points out:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
Ross, 60 Cal. Rptr. at 269, 429 P.2d at 621.
It is clear that comments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial by influencing the jury verdict and that an *1137 appellate court, or even the trial court, is likely to find that the comment is harmful under Chapman. High risk that an error will be harmful is not enough, however, to justify categorizing the error as always harmful (per se). In the case at hand, if the accused had taken the stand and confessed guilt during cross examination, we could say beyond a reasonable doubt that the officer's comment on post-arrest silence did not affect the jury's verdict. Yet the dissenters would have us declare in that instance that the comment[13] is per se reversible error and requires a retrial. It would be possible to set forth an infinite number of realistic hypothetical cases where an analysis of the strength and nature of the permissible evidence of guilt and of the strength and nature of the impermissible comment on silence would show beyond any reasonable doubt that the jury verdict was not affected by the comment on silence. Accordingly, it cannot be said that comment on silence always denies the accused a fair trial and is thus subject to per se reversal. By contrast, if a defendant is denied counsel and takes the stand and confesses, we cannot say beyond a reasonable doubt that the error, denial of counsel, was harmless. Denial of counsel is always harmful, regardless of the strength of the admissible evidence, and can be properly categorized as per se reversible.
The suggestion is made that it is wise public policy to hold that comments on failure to testify and post-arrest silence are per se reversible error. This Court is not the forum for a debate on wise public policy. The responsible branch of government has already established the public policy through section 924.33 that appellate courts will not reverse trial court judgments unless it is determined on the record that harmful error has occurred. This legislative determination of public policy is not constitutionally infirm. Accordingly,
[o]ur responsibility as an appellate court is to apply the law as the Legislature has so clearly announced it. We are not endowed with the privilege of doing otherwise regardless of the view which we might have an individuals. Way v. State, Fla. 1953, 67 So.2d 321. Also see Trafficante v. State, Fla. 1957, 92 So.2d 811.
Gordon, 104 So.2d at 541.
For the reasons set forth above, we answer the certified question in the affirmative and hold that comments on a defendant's silence are subject to harmless error analysis as set forth herein.[14]
The district court below found that there was sufficient evidence to support the conviction, absent the impermissible comment on post-arrest silence, and concluded that, if the harmless error rule could be applied to the facts of the case, the conviction would be affirmed because the error was harmless beyond any reasonable doubt. The district court's reference to a sufficiency-of-the-evidence test suggests a misunderstanding of the harmless error test. Because we wish to make it clear that the harmless error test is to be rigorously applied, we examine the record ourselves rather than remanding. We conclude that the error was harmful and the conviction should be quashed.
The pertinent evidence at trial was as follows. A police undercover officer and an informant undertook to arrange a controlled purchase of approximately one pound of cocaine from a suspected drug dealer, Rosa. The informant, who was equipped with a body bug, made contact with Rosa and arranged for Rosa to bring the cocaine to the officer's motel room. Two police surveillance units were monitoring and recording the transmissions from the body bug. When Rosa and the informant arrived at the motel room, Rosa told the officer that the cocaine was with another man in a motel room across the street. *1138 Rosa drove alone in the officer's unmarked rental car to get the cocaine. He was observed driving across the street and returning in approximately five minutes with a passenger, DiGuilio, who remained in the car while Rosa went to the officer's motel room. After the cocaine was produced and field tested, the surveillance officers moved in and arrested Rosa and DiGuilio. Initially, for a period of about forty-five to sixty minutes, Rosa and DiGuilio were held in custody in the rental car. The record is not clear, but it appears they could have conversed during this time and, of course, they observed the police activity and, perhaps, overheard some of the police conversation. Rosa and DiGuilio were then moved to a marked police car for transportation to the station and left alone in the car with a hidden recording device. They engaged in a short conversation wherein DiGuilio indicated he knew something of what had happened. The theory of the state at trial was that DiGuilio's remarks proved that he had trafficked in cocaine and conspired with Rosa to traffic in cocaine. The jury returned verdicts of not guilty to trafficking and guilty of conspiring to traffic. The theory of the state on appeal is that the evidence of guilt, absent the impermissible comment, is overwhelming and, thus, the error is harmless.
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict. On this record, it is clear that we cannot declare a belief beyond a reasonable doubt that the police officer's impermissible testimony did not affect the jury verdict and was harmless beyond a reasonable doubt. First, the permissible evidence was not clearly conclusive. Rosa testified he was going to obtain the cocaine from a cohort. The fact that Rosa returned shortly with Diguilio and the cocaine does not show beyond a reasonable doubt that DiGuilio was a cohort who was holding the cocaine. There are entirely plausible explanations consistent with DiGuilio's innocence. For example, DiGuilio could have been present in the motel room and not known of the impending drug deal or of the cocaine. Rosa's statement to the purported drug buyer about a cohort could have been false, a precautionary measure to dissuade strong-arm tactics. Violence, suspicion, and lying between drug dealers is common. The fact that the jury found DiGuilio not guilty of trafficking in cocaine indicates it was not convinced beyond a reasonable doubt that DiGuilio had possessed the cocaine. Second, the context of the recorded conversation between Rosa and DiGuilio is ambiguous. (Because of poor recording quality, it is also very hard to understand.) By the time of the conversation, Rosa and DiGuilio had been in custody together for approximately an hour. Except by inference, DiGuilio's remarks do not directly show that he was a conspirator. Indeed, under the circumstances, it is plausible that DiGuilio had learned of the drug deal after the arrest by observing the events or in an unrecorded conversation with Rosa and that DiGuilio's recorded remarks were based on knowledge obtained after his arrest.
Turning then to the impermissible testimony, it put before the jury the fact that DiGuilio declined to offer any plausible explanation at the time of his arrest for his suspicious presence in the midst of a drug deal. Further, at least indirectly, it also highlighted for the jury the fact that DiGuilio was not testifying at trial and still had offered no plausible explanation. Under those circumstances and on this record, we conclude that the error was not harmless and constituted reversible error. § 924.33, Fla. Stat. (1981).
*1139 In his perceptive essay, The Riddle of Harmless Error, former Chief Justice Traynor addressed various common errors which, historically, appellate courts fall into when applying harmless error analysis. The worst is to abdicate judicial responsibility by falling into one of the extremes of all too easy affirmance or all too easy reversal. Neither course is acceptable. The test must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review. The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. This rather truncated summary is not comprehensive but it does serve to warn of the more common errors which must be avoided.
We wish to emphasize that any comment, direct or indirect, by anyone at trial on the right of the defendant not to testify or to remain silent is constitutional error and should be avoided. We have eschewed the draconian measure of automatically reversing convictions as a means of punishing prosecutorial misbehavior. State v. Murray, 443 So.2d 955 (Fla. 1984). However, we reiterate what we said in Murray at 956:
When there is overzealousness or misconduct on the part of either the prosecutor or defense lawyer, it is proper for either trial or appellate courts to exercise their supervisory powers by registering their disapproval, or, in appropriate cases, referring the matter to The Florida Bar for disciplinary investigation. Arango v. State, 437 So.2d 1099 (Fla. 1983); Spenkelink v. Wainwright, 372 So.2d 927 (Fla. 1979) (Alderman, J., concurring specially); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982).
See also Bertolotti v. State, 476 So.2d 130 (Fla. 1985).
The decision of the district court is approved for the reasons set forth herein and this cause is remanded for further proceedings in light of this opinion.
It is so ordered.
McDONALD, C.J., and BOYD and OVERTON, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion, in which EHRLICH and BARKETT, JJ., concur.
ADKINS, Justice, concurring in part and dissenting in part.
I concur in the decision to reverse the conviction, but strongly dissent to the ill-conceived reasoning which places an inordinate burden on the appellate court and deprives defendants of a constitutional right.
EHRLICH and BARKETT, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Act of Mar. 16, 1878; currently codified as 18 U.S.C. § 3481 (1986).
[3] Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), acknowledged that Wilson was grounded on statute but held that prosecutorial comment on a defendant's failure to testify also violated the fifth amendment.
[4] The act was later codified as section 3979, General Statutes (1906); section 6080, Revised General Statutes (1920); section 8383, compiled General Laws (1927); and section 918.09, Florida Statutes (1941). Section 918.09 was repealed by section 180, chapter 70-339, Laws of Florida, following its incorporation in 1967 as Rule of Criminal Procedure 1.250. It is currently contained in Florida Rule of Criminal Procedure 3.250.
[5] From 1865 to 1895 an accused had the statutory right to make a statement under oath to the jury. The accused was not a witness and could not be examined on the sworn statement. Ch. 1472, No. 9, § 4, Laws of Florida (1866); ch. 1816, No. 1, Laws of Florida (1870); Hart v. State, 38 Fla. 39, 20 So. 805 (1896); Hawkins v. State, 29 Fla. 554, 10 So. 822 (1892); Miller v. State, 15 Fla. 577 (1876); Barber v. State, 13 Fla. 675 (1871).
[6] Originally enacted by chapter 6223, § 1, Laws of Florida (1911), currently codified as section 59.041, Fla. Stat. (1985).
[7] The statute reads:

924.33 When judgment not to be reversed or modified.  No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
[8] There is no reference in Way, Trafficante, or Gordon to section 924.33. A review of the briefs filed in these cases shows that the state did not rely on, or even recognize the existence of, section 924.33. In Way, the state relied on the general proposition that improper comments by the prosecutor are not per se reversible; in Trafficante, that there was no comment on failure to testify; and, in Gordon, that the issue had not been preserved and there was no comment on failure to testify. In a petition for rehearing on Way, which we denied, the statute untimely sought rehearing and reargument on the applicability of section 924.33.
[9] In this connection, see Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), where the Court recognized that Congress and the fifty states had the authority to enact harmless error statutes or rules, and had done so. Note, also, that, although section 924.33 was enacted prior to Chapman, it is consistent with Chapman.
[10] The prohibition of prosecutorial comment on failure to testify is constitutional, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). However, there is no constitutional right to per se reversal. Chapman and progeny.
[11] Annotation, Comment or Argument by Court or Counsel that Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify, 14 A.L.R.3d 723, 726-27.
[12] See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), for a brief overview of the legal reform movement of the early twentieth century which introduced the rule of harmless error as a means of substituting judgment for automatic application of rules in order to correct the history of abuses whereby appellate courts "tower[ed] above the trials of criminal cases as impregnable citadels of technicality." Id. at 759, 66 S.Ct. at 1245 (citations omitted).
[13] The comment was "[a]fter that, he advised me he felt like he should speak to his attorney."
[14] Our decision that comment on post-arrest silence is not per se reversible error overturns the portion of Clark v. State, 363 So.2d 331 (Fla. 1978), to the contrary.