GOSHORN, Judge.
Willie J. Cameron appeals from his conviction and sentence for aggravated assault with a deadly weapon and possession of a firearm by a convicted felon. We reverse.
Three people testified at Cameron’s jury trial; the alleged victim, Diane Oliver, her girlfriend, Theresa Longshore, and the investigating police officer, John Mina. Oliver testified that she and Cameron had known each other eleven years and that Cameron is the father of two of her children. Oliver stated that Cameron had been harassing her all week. According to Oliver, about midnight on February 9, 1992, Oliver and Long-shore were walking to a party. Oliver saw Cameron walking toward her, so she crossed the street to avoid him. Oliver testified that Cameron approached her and asked her to repay $40. He grabbed her by the shirt and hit her in the face. On direct examination, Oliver testified that she saw Cameron pull a gun out of his pants, she grabbed him, closed her eyes, and started praying. She heard a gunshot, opened her eyes and saw Cameron running toward the police station. She was frightened to see the gun and denied owning or carrying a gun herself. However, on cross-examination, Oliver’s testimony was conflicting. She testified that she had not seen the gun until after it was fired, but also *1320 stated that she had seen the gun “when he did his hand like that to go into his pants,” which presumably was before the gun was fired. Oliver then went on to the party with Longshore and did not call the police until several hours later.
Longshore testified Cameron was drunk and grabbed Oliver and that “He had pulled something from him.”[1] Longshore started to run. She saw only a silver object and could not tell if it was a gun. Longshore admitted that it was possible that Oliver had the gun and that Cameron was trying to grab it from Oliver.[2]
Officer Mina, the investigating officer, testified that he spoke first with Oliver, then went to the hospital to see Cameron. According to Mina, Cameron originally gave a false name and said he had been shot in a drive-by shooting. Cameron later admitted the story was false but said Oliver had the gun and that he was shot while trying to get it away from her. On redirect examination, over objection, Mina was permitted to testify to the content of a conversation the officer had with unspecified hospital personnel:
Q. Officer Mina, what was your understanding of the angling of the wound based on your investigation at the hospital?
A. That it was a downward angle almost — it was an angle which a person would have shot himself. The personnel at the hospital were laughing about it, because it was a downward angle as if he had shot himself.
Because this impermissible hearsay testimony was crucial to the State’s theory that Cameron shot himself with his own gun during the altercation, we are unable to say that the error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
REVERSED and REMANDED.
W. SHARP, and PETERSON, JJ., concur.

. Presumably meaning Cameron pulled something from somewhere on Cameron’s body.

. Interestingly, but not relevant to our decision, it was revealed at Cameron’s sentencing hearing that prior to Cameron’s trial, Oliver had been arrested for aggravated assault with a firearm which was supposedly the same gun that Oliver alleged Cameron used in this incident.