FERGUSON, Judge.
This case graphically presents a deadly phenomenon now endemic in our social fabric. In a mindless moment of “machismo”, one young man, for reason of a petty grievance, looks for and finds a handgun which he uses to snuff out the life of an acquaintance.
The blame for these recurring incidents has been laid, in great part, on an easy availability of efficient weapons of destruc *237 tion and an entertainment media which, in glorifying such violence, cheapens the value of human life. Nevertheless, the problem is tossed into the lap of an ill-equipped criminal justice system for a final resolution. When it ends, two sets of families and friends are left grief stricken.
The assailant in this case was indicted by a grand jury for first-degree murder, convicted by a jury of second-degree murder, and sentenced by a judge to twenty years imprisonment. In this appeal from the judgment and sentence, he alleges, among other things, gross prosecutorial misconduct. Although the conviction and sentence must be affirmed — because there is no reasonable possibility that error affected the verdict, State v. DiGuilio, 491 So.2d 1129 (Fla.1986) — we are compelled to condemn the amateurish conduct of the prosecutor in improperly portraying the defendant as a bad character.
Our attention is called to the following questioning and argument by the prosecutor. On direct examination of one of the State's young witnesses:
Ms. Weintraub [prosecutor]: Did the detective ask you anything about your getting into any kind of trouble?
Mr. Palmer [witness]: Yes, he did. Prosecutor: Did you answer those ques- . tions?
Mr. Palmer: Yes.
Prosecutor: And what did you tell him?
Mr. Palmer: I told him what I’ve done, you know, because he asked me if me and Willie have done anything and I said yes.
On cross-examination of the defendant:
Prosecutor: Mr. Benedit, you have had some problems with the courts before, the Juvenile Court before.
Mr. Denaro [defense counsel]: Objection, Judge.
In closing argument:
Prosecutor: Was [a defense witness] there when Lowell was shot and killed? No ... No, he was not. Why is it important? Because Cobi, who I agree is one of the sweetest witnesses in this case, that has nothing to do with this group of teenagers who all know how to get in trouble and all know how to use guns.
(Emphasis supplied). On lesser proof, reversal would have been required. Evidence of juvenile charges or convictions, as the prosecutor had already been instructed by a pretrial order in liming, was inadmissible. § 90.610(l)(b), Fla.Stat. (1989); In the Interest of I.S.H., 344 So.2d 1295 (Fla. 4th DCA 1977).
Despite the prosecutor’s comments, we affirm the conviction and sentence because the overwhelming evidence against the defendant showed a motive for the shooting, a plan of action, a search for a weapon, evidence that the defendant was familiar with firearms, an eyewitness, and an admission that he shot the victim. Not surprisingly, a jury rejected defendant’s weak “accidental shooting” defense. That the defendant did not appreciate the gravity of his dangerous conduct until after the fact, is not a legal defense to homicide. The prosecutorial misconduct must be regarded as no more than harmless improprieties. See Williams v. State, 425 So.2d 591 (Fla. 3d DCA 1982).
Affirmed.