587 So.2d 487 (1991)
Lambert Keith GAVINS, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2022.
District Court of Appeal of Florida, First District.
September 4, 1991.
Rehearing Denied September 30, 1991.
*488 Nancy A. Daniels, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Lambert Gavins appeals three final judgments in circuit court cases numbered 88-949, 89-569, and 89-1793, adjudicating him guilty of burglary of a structure, grand theft auto, driving without a valid driver's license, and violating probation and community control, and imposing various terms of imprisonment including habitual felony offender[1] sentences in case number 89-1793. Gavins raises three issue on appeal. We reverse as to the second and third issues and remand for a new trial.
On December 27, 1988, in case number 88-949, after Gavins entered a plea of nolo contendere to the charges of grand theft auto and burglary of a structure with intent to commit theft, the circuit court adjudicated him guilty of the offenses and imposed two concurrent five-year periods of probation. On the same day, in case 88-527, Gavins also entered a plea of nolo contendere to the charge of petit theft and was placed on probation for a period of 60 days, to run concurrently with the sentences imposed in case 88-949. On November 3, 1989, in case 89-569, after Gavins entered a plea of nolo contendere to the charge of aggravated assault and the circuit court adjudicated him guilty of that offense, the court revoked his probation in cases 88-527 and 88-949. Gavins was then placed on concurrent two-year periods of community control in cases 88-949 and 89-569, followed by a consecutive one-year term of probation in case 88-527.
On December 11, 1989, the state filed an information in case 89-1793 charging Gavins with burglary of a structure with intent to commit theft, grand theft of an automobile, and operating a motor vehicle without a valid driver's license. The state also filed an affidavit alleging that Gavins had violated the terms of his community control in cases 88-949 and 89-569 by violating numerous conditions of his community control, including the commission of the offenses in case 89-1793.
On March 30, 1990, a jury trial was held with respect to the charges in case 89-1793. After both sides had presented their cases and rested, but prior to the closing arguments, Gavins's defense attorney, Assistant Public Defender Mark Harllee, made a motion for a mistrial based on conflict of interest. Also present at this proceeding were two other assistant public defenders, Mr. Bishop who represented the accomplice Sanford Jenkins in an unrelated matter, and Mr. Loveless, who apparently supervised the other assistant public defenders. Mr. Harllee informed the trial judge that there appeared to be a conflict of interest for the reason that while he was discussing the case with other attorneys at the public defender's office during the lunch break, he learned that Bishop was representing Jenkins in a pending case in another division. Harllee also stated that he had not previously known about the office's representation of Jenkins. Mr. Bishop informed the court that he represented Jenkins in an unrelated matter, an attempted robbery case, and that during that representation he had received confidential information that he revealed to Harllee (apparently during the lunch break), but stated that he could not state the nature of the information. After Mr. Loveless instructed Bishop and Harllee not to reveal the nature of the information, Mr. Loveless told that judge that: "The knowledge that Mr. Bishop gave to Mr. Harllee  if Mr. Harllee had not been in our office, would have been of great value to a defense attorney. It should  it's something *489 that should have been brought up during the cross examination of Mr. Jenkins." Then after stating that he too could not reveal the nature of the conflict for ethical reasons, Loveless stated that "the conflict is not necessarily in the evidence that was presented at trial. It is some information that was not presented at trial, that would have been presented at trial if certain information had been available to Mr. Harllee," and that "[w]e also have other information, your Honor, that has a direct bearing on the case" that is available now that "should have been available to the defense attorney prior to this particular case. It would have been if not for the fact that we represented him." In response to a question from the prosecutor, Harllee informed the judge that he believed that he could effectively give a closing argument based on the evidence presented in the trial. The prosecutor argued that the motion should be denied because there was no showing of prejudice. He pointed out that Harllee had no knowledge of the conflict, Harllee had no conversation with Bishop about the conflict until after the cross-examination of Jenkins, there was no conflict between Jenkins's and Gavins's trial testimony, and Harllee was required to argue during closing only from the evidence that was presented at trial. The trial judge denied the motion, stating that the trial was more important than the conflict and that:
The actual  there's no actual prejudice because of the scenario that the Court heard in the evidentiary portion. I wish it hadn't happen, too, but, I appreciate the frankness and demeanor in coming forth with this. I do not feel like it would be at all proper for the Court to grant a mistrial simply because of the relationship that existed and had no impact at all on what we've done here today. That's the basis for the Court's decision.
On June 25, 1990, the circuit court entered final judgments adjudicating Gavins guilty as charged in case number 89-1793, and guilty of violation of probation and community control in cases numbers 88-527, 88-949 and 89-569, and imposed the following sentences: in case number 89-1793, ten-year terms of imprisonment as a habitual felony offender for the burglary and grand theft auto charges, and a 60-day term of imprisonment for the no valid driver's license charge; in case number 89-569, a three and one half-year term of imprisonment for violating community control on the aggravated assault charge; and in case number 88-949, three and one half-year terms of imprisonment for violating community control on the grand theft and burglary charges. In cases numbers 88-527 and 88-949, the circuit court also entered an order revoking probation.
Gavins argues to us that the circuit court erred in allowing the prosecutor to cross-examine him, over objection, regarding his prior felony convictions and in allowing the prosecutor to name the particular offenses on cross-examination, recross-examination, and during closing argument. He argues that he correctly admitted his five prior felony convictions on direct examination, that he neither misstated nor misled the jury into thinking that he had anything but five prior felony convictions, and thus he did not "open the door" to further inquiry by the prosecutor on cross-examination. He also argues that even if he "opened the door" to further inquiry, the circuit court erred in allowing the prosecutor to name the prior offenses on cross-examination and to emphasize on recross-examination and closing argument that his prior record included the very crimes for which he was on trial.
Generally, when a defendant in a criminal case takes the stand, the prosecutor is permitted to attack the defendant's credibility by asking whether the defendant has ever been convicted of a felony or a crime involving dishonesty or false statement, and how many times. § 90.610, Fla. Stat. (1989). If the defendant admits the number of prior convictions, the prosecutor is not permitted to ask further questions regarding prior convictions, nor question the defendant as to the nature of the crimes. If, however, the defendant denies a conviction, the prosecutor can impeach him by introducing a certified record of the conviction. Cummings v. State, 412 So.2d 436, *490 438-39 (Fla. 4th DCA 1982); Rommell v. Firestone Tire & Rubber Co., 394 So.2d 572 (Fla. 5th DCA 1981). The prosecutor is not permitted to ask the defendant questions about prior convictions unless the prosecutor has knowledge that the defendant has been convicted of a crime and has evidence necessary for impeachment if the defendant fails to admit the number of convictions for such crimes. Cummings v. State, supra; Rommell v. Firestone Tire & Rubber Co., supra. The proper method to impeach the witness who answers the question regarding his prior convictions incorrectly, is to offer a certified record of the witness's prior convictions, which will necessarily reveal the nature of the crimes. It is improper for the prosecutor or the questioning party to name the specific crimes or to state the nature of the crimes. See Cummings v. State, supra; Rommell v. Firestone Tire & Rubber Co., supra; Irvin v. State, 324 So.2d 684 (Fla. 4th DCA), cert. denied, 334 So.2d 608 (Fla. 1976). See also Fulton v. State, 335 So.2d 280, 283-84 (Fla. 1976) (if the witness denies a prior conviction or misstates the number of prior convictions, the specific offense is identified only when the record of conviction is entered into evidence; any description of the crime involved not shown by such record is improper).
In this case, the record indicates that on direct examination, when Gavins's attorney asked him whether he had ever been convicted of a felony, Gavins responded that he had. The attorney then asked, "Is that five prior felonies?," and Gavins responded, "To the best of my knowledge, it's only about  yeah, probably about that." On cross-examination, the prosecutor asked Gavins, "Do you have five prior felony convictions or about five prior felony convictions," and Gavins responded, "About five." The prosecutor then asked, "You don't have five exactly?," and Gavins responded, "To my knowledge  to the best of my knowledge, I do not know." The prosecutor asked Gavins whether he was convicted of escape on December 9, 1985, whether he was arrested for another charge of escape in October 1985 for which he was convicted on December 9, 1985, and whether he was convicted of grand theft, burglary of a structure, and aggravated assault in November 1989. During recross-examination, the prosecutor stated, over objection, that Gavins's past record included burglary, grand theft, and aggravated assault. The prosecutor did not present certified copies of Gavins's prior felony conviction or introduce such record into evidence. Also, during closing argument, the prosecutor argued, without objection, that:
The defendant asked you to believe him when he told you this story. This is from a man who deals in crack cocaine. This is from a man who had been convicted of escape, not once, but twice. This is from a man who has been convicted of aggravated assault. This is from a man who has been convicted of grand theft. This is from a man who is a known and convicted burglar.
We hold that the circuit court erred in allowing the prosecutor to question Gavins about his prior felony convictions after Gavins had correctly admitted that he had five prior felony convictions. The prosecutor offered no proof that Gavins had more than five prior felony convictions. Cummings v. State, supra; Fulton v. State, supra. It was also error for the prosecutor to attempt impeachment of Gavins without making a certified copy of Gavins's convictions a part of the record, and to have named the specific offenses on cross- and recross-examination and during closing argument. Irvin v. State, supra; Rommell v. Firestone Tire & Rubber Co., supra. Under the circumstances, we cannot agree with the state's argument that this error was harmless. Fulton v. State, supra; Irvin v. State, supra. See also DiGuilio v. State, 491 So.2d 1129 (Fla. 1986). Therefore, we reverse Gavins's convictions in case number 89-1793 and remand for a new trial.
Gavins next contends that if this court reverses his convictions in case number 89-1793, it should also reverse the sentences imposed upon revocation of community control in cases numbers 88-949 and 89-569 and remand the cause to the circuit court for further proceedings. He argues that while he admitted several technical violations of community control and several *491 substantive violations that were based upon the same transaction that gave rise to the filing of the amended information in case number 89-1793, the circuit court never indicated whether it would have revoked community control based upon the violations other than the commission of the offenses in case number 89-1793 or the jury verdict or testimony in that case. Since it is not clear that the circuit court would have revoked community control solely with respect to those violations alone, he argues, a reversal of the convictions in case number 89-1793 requires that the cause be remanded to give the trial court an opportunity to clarify its intent.
Where revocation of a defendant's probation or community control is based on violation of more than one condition of probation or community control and one of the grounds for revocation is found not to be supported by the record, but the other ground is a substantial violation supported by the record and could by itself support revocation, appellate courts have reversed the order of revocation and remanded for reconsideration by the trial court if it was unclear from the record that the trial court would have revoked the probation or community control based solely on the remaining substantial violation. For example, in Neves v. State, 502 So.2d 1343, 1344 (Fla. 2d DCA 1987), the trial court revoked the defendant's probation based on the defendant's alleged violation of two conditions of probation: (1) failure to submit written monthly reports, and (2) failure to pay costs of supervision and court costs. On appeal, the second district found that while there was substantial, competent evidence to support the trial court's finding that the defendant failed to file required monthly reports, the trial court erred in finding that the defendant violated his probation by failing to pay the various costs because no evidence was presented to show that the defendant had the ability to make the required payments. Id. The second district noted that while failure to file the monthly reports was a substantial violation sufficient by itself to support revocation of probation, it was not clear from the record that the trial court would have revoked the defendant's probation based solely on that violation. Therefore, the second district reversed the order of revocation and remanded the cause to permit the trial court to consider whether the violation of the remaining condition warranted revocation. See also Jess v. State, 384 So.2d 328 (Fla. 3d DCA 1980) (where trial court revoked the defendant's probation based on violation of two separate conditions of probation, one of which was improper and the other would support revocation on its own, but it is unclear whether trial judge would have revoked the probation or imposed the same sentence on the valid ground, cause was remanded for the lower court to make those determinations). But cf. Sampson v. State, 375 So.2d 325 (Fla. 2d DCA 1979) (remand not required where the trial court indicated that revocation was based on each and every violation).
In this case, the orders revoking Gavins's community control in cases numbers 88-949 and 89-569 state as reason for revoking community control that Gavins had violated "Conditions (1), (3), (5) and (8) of his Community Control Order as stated in the Affidavit Violation of Community Control dated November 27, 1989." Condition (1) required Gavins to file monthly reports with his community control officer; condition (3) prohibited Gavins from changing his residence or employment, or leaving the county of his residence without first procuring the consent of his community control officer; condition (5) required Gavins to live and remain at liberty without violating the law; and condition (8) required Gavins to allow the officer to visit with him in his home, employment site, or elsewhere, and required Gavins to comply with all instructions the officer may give him. At trial, Gavins admitted that he had left his residence without obtaining permission and that he failed to file monthly reports. Each of these grounds could have been sufficient by itself to support revocation of Gavins's community control. See Neves v. State, 502 So.2d at 1344 (failure to file monthly reports is a substantial violation of probation sufficient by itself to support revocation of probation); Dietz v. State, 534 So.2d 808 (Fla. 2d DCA 1988) (state met its burden of proving a violation of community control where it presented substantial, *492 competent evidence showing that the defendant was not home at a time when he was required to be there). However, the orders revoking community control do not indicate that the circuit court would have revoked probation based on either ground or both grounds alone in the absence of Gavins's conviction of the offenses in case number 89-1793. Because we find that it is unclear from the record whether the circuit court would have revoked Gavins's community control based on the violations other than his commission of the offenses in case number 89-1793, we reverse the orders of revocation and the sentences imposed in cases 89-569 and 88-949 and remand for the circuit court to reconsider whether to revoke Gavins's community control.
Gavins's other contention is that the circuit court erred in denying his motion for mistrial when it became known that another lawyer from the public defender's office was representing his accomplice, thereby depriving Gavins of his statutory right to separate counsel, and his rights to due process and assistance of counsel secured by the state and federal constitutions. In light of our ruling on the other issues, we find it unnecessary to address this point.
REVERSED and REMANDED.
ERVIN and MINER, JJ., concur.
NOTES
[1] While the state's notice sought sentencing as a habitual violent felony offender, and the prosecutor stated at the sentencing hearing that the state was seeking habitual violent felony offender sentences and presented proof that Gavins qualified as a habitual violent felony offender, the oral pronouncement of sentencing and the written sentence indicates that Gavins was sentenced as a "habitual felony offender." The state has voiced no objection to the oral pronouncement or the written judgment.