QUINCE, J., concurring in part and dissenting in part.
I concur with my colleagues that Lowe is not entitled to relief on the majority of his claims; however, I cannot agree that the Hurst error in this case is harmless beyond a reasonable doubt. The majority supports this conclusion by relying primarily on the jury's unanimous recommendation for death. The majority finds that because the jury unanimously recommended death, the Court can conclude beyond a reasonable doubt that a rational jury would have unanimously found all of the findings necessitated by Hurst , 202 So.3d at 44. I respectfully disagree for three reasons.
First, the trial judge improperly curtailed Lowe's ability to fully inform the jury regarding the operation of Florida's parole system and Lowe's consecutive fifteen-year sentence for robbery. Additionally, the prosecutor and the trial court explained to the jury that Lowe would get credit for time served and that the court could not speculate as to when Lowe would be released on parole. As the majority states, after the State told the jurors that Lowe would get credit for time served, the court explained:
Also, but, as far as eligibility, none of us in the judicial system have anything to do with whether a person is either granted parole or not granted parole, so we're unable to speculate on the likelihood of parole and it is just out of our hands.
On the other hand, also, that should not be a consideration. The only consideration that you should make in making your determination is the aggravating factors and the mitigating factors. That should not enter into your decision-making deliberations.
The majority concludes that there was no error in the trial court's instructions to the jury. In support of this holding, the Court relies on Armstrong , where we found no error where the jury was informed that the capital defendant on resentencing was entitled to credit for time served for life without the possibility of parole for twenty-five years option. 73 So.3d at 173-74. In light of Hurst , however, this Court's opinion in Armstrong no longer supports the conclusion that this type of error-incompletely explaining to the jury Florida's parole system or credit for time served-is harmless.
Armstrong argued "that the trial court abused its discretion when it failed to instruct the jury that [he] was not guaranteed parole at or after 25 years." Id. at 173. We stated that case law "does not require that a jury be instructed on the eligibility of parole," and denied relief because "[t]he jury instruction below was not confusing, misleading, ... contradictory," or "a misstatement of law." Id. at 174. The jury also asked whether Armstrong would be entitled to credit for time served, and the trial court instructed the jury that he would. Id. The majority concluded:
[E]ven if the trial court abused its discretion, it would be of no consequence, because any error is harmless. Armstrong *70 had already been convicted of the crime. It cannot be said that this instruction would have caused the jury to arrive at a conclusion they would not have otherwise reached as there is substantial aggravation in the instant case that provides independent support for the jury recommendation. Accordingly, we conclude that the trial court did not abuse its discretion below.
Id.
Justice Pariente concurred in part and dissented in part in Armstrong , writing that she "would reverse for a new penalty phase" due to "the trial judge's answer to a question from the jury regarding sentencing options." Id. at 175 (Pariente, J., concurring in part and dissenting in part). Justice Pariente explained that it was "apparent on the face of the jury's inquiry that the jurors had a very logical question regarding the effect of a recommendation of life and wanted to know in advance how such a recommendation would work in this case, since the defendant had already served seventeen years of any sentence to be imposed." Id. at 176. She concluded "that by not answering the question to explain that the twenty-five years was not the defendant's actual sentence, but rather the minimum length of a sentence of life, and that there was no guarantee of parole at or after twenty-five years, the court gave the jurors a confusing and incomplete answer, leading them to believe that he would be released in another eight years." Id.
This explanation of how the trial court's incomplete explanation as to parole and credit for time served is even more compelling post- Hurst for the conclusion that defendants in this situation are entitled to a new penalty phase. It is impossible to know the true effect the information the jury received regarding Lowe's previous death sentence and the lack of appropriate information it received regarding the parole system and Lowe's other sentences had on its unanimous recommendation for death. However, it is clear these errors could have very easily influenced the jury's perception of the case and had an adverse impact on the jury's unanimous recommendation.
Second, the jury was improperly informed that Lowe had previously been sentenced to death. During the State's closing argument, it referenced Lowe's prior death sentence four times:
(1) "You've heard he's on - has been on death row for the last twenty years. We're asking you to impose the death sentence. Nothing has changed since 1990."
(2) "He's been on death row for twenty years, he's watched 24/7; of course he's gonna act well. He does well in a structured environment, absolutely. That's not the problem."
(3) "Now you've heard the testimony. Nothing has changed since 1990. Nothing. The Defendant's story is still the same, and we've shown you that it's not true, and as a result of that you should send him back to death row."
(4) "With your recommendations you can send Rodney Lowe back to death row, and that's what I'm asking you to do."
These statements, in my view, amount to fundamental error. The majority opinion correctly cites to Teffeteller , wherein we held that "a death sentence which has been vacated by this Court should not play a significant role in resentencing proceedings." 495 So.2d at 745. There, the defendant argued that it was reversible error to inform the jury of his prior sentence of death. Id. at 745. In finding that testimony from the State's psychiatric expert did not amount to reversible error, we relied on previous testimony from the defendant's *71 witness and the defendant himself that informed the jury of his prior death sentence. Id. at 747.
The defendant also argued that the State's comments during closing improperly informed the jury of his prior death sentence. Id. In rejecting that argument, we found that "the single sentence" that referenced the defendant's prior sentence "was not so prejudicial or inflammatory that a new sentencing proceeding [was] required." Id. Here, however, the State's comments went beyond a single sentence. The State mentioned several times during its closing that Lowe had been previously sentenced to death and nothing had changed since Lowe's initial sentence of death was imposed. While Lowe did not object during the State's closing, these comments may have influenced the jury and preconditioned it to recommend a death sentence.
Third, we cannot know that the jury found each aggravating factor unanimously, despite the jury's unanimous death sentence recommendation. Because one of the aggravators found by the trial court for the murder in this case-that the capital felony was committed to avoid arrest-requires specific factual findings, Hurst requires that the jury, not the trial judge, make that determination. The jury made no such determination in Lowe's case. By ignoring the record and concluding that all aggravators were unanimously found by the jury, the majority is engaging in the exact type of conduct the United States Supreme Court cautioned against in Hurst v. Florida , 136 S.Ct. at 622.
Because harmless error review is neither a sufficiency of the evidence review nor "a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence," State v. DiGuilio , 491 So.2d 1129, 1138 (Fla. 1986), I cannot conclude beyond a reasonable doubt that the errors here were harmless, and I would vacate Lowe's death sentence and remand for resentencing.